IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FRANK RUSSELL MCCOY | Case No. 1:07-CR-18-WLS |

### MOTION TO DISMISS THE INDICTMENT FOR IMPROPER VENUE

Comes now Defendant, Frank Russell McCoy, by and through undersigned counsel, Morad Fakhimi, and moves this Court, pursuant to Fed. R. Crim. P. 12(b)(3)(B), to dismiss the indictment under which he was charged in the instant case on grounds that it fails to invoke this Court's jurisdiction over the person of the defendant, a concept that is indistinguishable from constitutional criminal venue. In support of which, the Defendant submits the following.

On June 13, 2007, a one-count indictment was returned by the grand jury, charging the defendant with having violated 18 U.S.C. § 1462. (Doc. 1). The indictment alleged only that the "defendant used an interactive computer service to transmit to the Middle District of Georgia and elsewhere, links to three web sites…{*three web addresses*}…which contained obscene…[descriptions of]…sexual abuse, rape, and murder of children, and from which web sites the obscene stories were downloaded into the Middle District of Georgia and elsewhere…in violation of Title 18 United States Code, Sections 1462 and 2." (Doc. 1). The indictment did not allege that any purportedly obscene stories were transmitted into this district by the defendant (the defendant is a Minnesota resident); instead, it was alleged that the defendant directed a transmission into this district which, rather than contain any purportedly obscene material, only consisted of 3 web

addresses, from which purportedly obscene matter was downloaded by someone in this district—not Mr. McCoy.

In pertinent part, 18 U.S.C. §1462 mandates that "whoever knowingly uses any…interactive computer service…for carriage in interstate or foreign commerce…any obscene…or filthy…writing…; or whoever knowingly takes or receives, from such…interactive computer service…any matter or thing the carriage or importation of which is herein made unlawful—shall be fined under this title or imprisoned…" 18 U.S.C. §1462.  A plain reading of § 1462, alone, does not seem to lend itself to the interpretation that it works to confer personal jurisdiction in the district where such material was received to punish the sender whose prohibited conduct took place in another district—in other words, when read in isolation and with a view to the question of personal jurisdiction (or criminal constitutional venue), the statute seems to expose the *sender* and *receiver* to criminal liability in the respective districts where the prohibited conduct transpired.

However, 18 U.S.C. § 3237 maintains in relevant part that "…any offense…begun in one district and completed in another…may be inquired of and prosecuted in any district in which the offense was begun, continued, or completed…[and] [a]ny offense involving...transportation in interstate or foreign commerce...is a continuing offense and...may be...prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves." 18 U.S.C. § 3237.  Since "carriage" and "transportation" in interstate commerce are interchangeable terms, §1462 is clearly an offense that § 3237 would classify as a "continuing offense" – allowing jurisdiction in any district through which the transportation occurred.  This, of course, makes perfect sense – if Congress is to criminalize the act of *transportation* with respect to a certain matter; then

for purposes of jurisdiction over the person of the violator, any district through which such prohibited transportation occurred would have a sufficient basis for the exercise of venue in compliance with the commands of Article III and the Sixth Amendment.

In light of that, it becomes clear that an out of state resident (as is the case here) may be subjected to federal criminal jurisdiction in this district if, from another district, he "uses any…interactive computer service…for carriage in interstate or foreign commerce" (*see* § 1462), that was either "continued [] or completed" in this district, "or into which such commerce, mail matter, or imported objected or person moves." (*see* § 3237). So, for present purposes, §1462 prohibits the use of an interactive computer service for interstate transportation of obscene material (as well as prohibiting the use of an interactive computer service for the receipt or taking of such material); and, § 3237 confers jurisdiction, regarding "any offense involving…transportation in interstate or foreign commerce[,]" in any district through which the material moved.

A plain reading of the two statutes makes it clear that for Mr. McCoy to be subjected to jurisdiction in this district for acts that he allegedly committed in another district – it would be necessary for the government to allege that he did something more (affecting this district) than send an email (or whatever sort of "transmission" was meant by that mention of that word in the indictment) containing only addresses from which purportedly obscene material was "taken or received" by a resident of this district not named in the indictment. It further becomes clear, that there was a ready basis for constitutional criminal venue in this district for the prosecution (under § 1462) of the person that allegedly went to the addresses in that email and actually committed a violation of § 1462 by using the internet to download purportedly obscene material into the district.

The indictment, therefore, fails to properly allege that the defendant used a computer for "carriage" of such material into or through this district – nor does the indictment allege that the defendant "transported" such material in interstate commerce in any district anywhere.  Mr. McCoy maintains that in order for an indictment, under the present circumstances, to properly invoke this Court's personal jurisdiction over an out-of-state defendant, the Sixth Amendment requires that the proscribed act of *transportation of obscene matter* occur (at least in part) in this district.  Instead the indictment alleges only that the defendant told someone in this district where such material may be found—jurisdictionally, a far cry from alleging an actual violation of the statute.

The question of proper venue in criminal proceedings was a matter of great concern to our Nation's founders—and differs significantly from the same concept in the context of non-criminal cases. The founders' complaints against the Crown, enumerated in the Declaration of Independence, did not fail to mention British transportation of colonists "beyond Seas to be tried."  Furthermore, the Constitution itself <u>twice</u> safeguards the defendant's right to proper venue: Article III, § 2, cl. 3 instructs that the "[t]rial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed"; also, the Sixth Amendment calls for trial "by an impartial jury of the State and district wherein the crime shall have been committed."  Additionally, Rule 18 of the Federal Rules of Criminal Procedure, echoing the constitutional commands, maintains that "prosecution shall be had in a district in which the offense was committed."

With the exception of those circumstances in which Congress has authorized nationwide service of process, before a non-resident defendant may be compelled to defend even a simple civil

case, the plaintiff has to show that the defendant has sufficient minimum contacts with the forum state to justify the exercise of personal jurisdiction therein. In most criminal cases, however, the required degree of contact is easily shown by the defendant's own presence and actions in the forum state, or by actions directed toward the forum state. *See United States v. Cabrales*, 524 U.S. 1, 9 (1998) (explaining that where the crime is an illegal mailing, venue is constitutionally proper both where the mailing was sent and where it was to be delivered); *Armour Packing Co. v. United States*, 209 U.S. 56, 76-77 (1908) (holding that venue was constitutionally permissible in district through which illegal shipment in interstate commerce passed). Hence, for purposes of determining the proper venue in a "continuing offense" contemplated by § 3237 – the course of the inquiry to establish proper venue requires that the "'*locus delicti* [of the charged offense] must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" *United States v. Rodriguez-Moreno*, 526 U.S. 275, 278 (U.S. 1999) (quoting *Cabrales*, 524 U.S. at 6-7 (1998)); cf. *United States v. Lombardo*, 241 U.S. 73, 77 (1916) ("where a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done.").

Hence, Congress has provided a means for finding venue for crimes that involve the use of transportation, as well as other types of "continuing offenses" under 18 U.S.C. § 3237. *United States v. McCulley*, 673 F.2d 346, 350 (11th Cir. 1982). To establish venue in such cases, the government must show that the crime took place on a form of transportation in interstate commerce. *United States v. Breitweiser*, 357 F.3d 1249, 1254 (11th Cir. 2004) (citing *McCulley*, 673 F.2d 346, 350 (11th Cir. 1982) (holding that to prosecute a crime that involved hiding in an airplane's luggage compartment and cutting open mail pouches, venue was proper in any state through which the plane

passed). In *Breitweiser*, the government met its burden by showing that the defendant committed the crimes on an airplane that ultimately landed in Georgia; hence, a showing that transportation in interstate commerce was involved. *Breitweiser*, 357 F.3d at 1254 (11th Cir. 2004). In *McCulley*, the court explained that "[§ 3237] is a catchall provision designed to prevent a crime which has been committed in transit from escaping punishment for lack of venue—its enactment was designed to eliminate the need to insert venue provisions in every statute where venue might be difficult to prove." *McCulley*, 673 F.2d at 350.

Additionally, and of the utmost importance to the present inquiry, it is well settled that proper venue must promote the aims of a criminal statute, not eviscerate them. *See e.g., United States v. Murphy*, 117 F.3d 137, 140 (4th Cir. 1997); *United States v. Muench*, 153 F.3d 1298, 1304 (11th Cir. 1998) (citing *Murphy*, 117 F.3d at 140).; *United States v. Cofield*, 11 F.3d 413, 417 (4th Cir. 1993) (proper venue should promote legislative purpose); and, *United States v. Newsom*, 9 F.3d 337, 338 (4th Cir. 1993) (same) (citing *United States v. Lombardo*, 241 U.S. 73, 77 (1916)). Since § 3237 is merely a venue statute, *see McCulley*, 673 F.2d at 350 (11th Cir. 1982), and not a criminal statute – "proper venue" in this case must necessarily be seen to promote, and not eviscerate, the aims of § 1462. Also, when a statute does not "plainly and unmistakably" cover a defendant's conduct, that statute will not be expanded to do so by court interpretation. *Dowling v. United States*, 473 U.S. 207, 105 S. Ct. 3127, 3131-3132 (1985) (pointing out that federal crimes "are solely creatures of statute", and that "accordingly, when assessing the reach of a federal criminal statute, we must pay close heed to language, legislative history, and purpose in order strictly to determine the scope of the conduct the enactment forbids.").

The purpose of predecessor to 18 U.S.C. § 1462 (18 U.S.C. § 396, which contains, for the purposes of the present discussion, virtually identical proscriptions as §1462) "was to prevent the channels of interstate commerce from being used to disseminate any matter that, in its essential nature, communicates obscene, lewd, lascivious or filthy ideas." *United States v. Alpers*, 338 U.S. 680, 683 (U.S. 1950). In this respect, the indictment in the instant case is seriously defective in that it does not allege that Mr. McCoy used the channels of interstate commerce to disseminate any obscene material – such would have been the case had he chosen to (as the indictment put it) "transmit to the Middle District of Georgia" material that was actually obscene, as opposed to a mere mention of where such material may be found. At best, the indictment alleges that Mr. McCoy chose to "transmit to the Middle District of Georgia" three addresses—and it was from the web sites located at those addresses, that someone other than Mr. McCoy downloaded purportedly obscene material.

Under this rationale, § 1462 is stretched to its breaking point – and the statute would necessarily be contemplated as proscribing non-obscene *discussion* (over the telephone or via email transmission, or via postal mail) as to where such material is to be found—a patent absurdity. [1]

---

[1] *See e.g.*, 18 U.S.C. 1462(c) (prohibiting the interstate transportation of "any drug, medicine, article, or thing designed, adapted, or intended for producing abortion, or for any indecent or immoral use; or any written or printed card, letter, circular, book, pamphlet, advertisement, or notice of any kind giving information, directly or indirectly, where, how, or of whom, or by what means any of such mentioned articles, matters, or things may be obtained or made.") (a proscription on tangible obscenity, as well as of the giving of information as to where such items may be found) – it should be noted that §1462(a) & (b), which criminalize interstate transportation of obscene books, recordings, writings, pamphlets, etc. (intangible obscenity) do not criminalize giving information as to where such materials may be found. It would then logically follow that if Congress wanted to proscribe the giving of such information with respect to intangible obscenity (as in sub-sections (a) and (b)), as it did with regards to tangible obscene materials (as in sub-section (c)), it could have done so. The fact that it did not do so is of great significance in the instant matter. The axiom, *expressio unius est exclusio alterius* (the express mention of one thing to the exclusion of all others–here, where one subsection goes farther than the others, it must be presumed that it was not by accident), as well as the rule of lenity, would counsel against reading the additional proscription of sub-section (c) into the text of sub-sections (a) & (b) as the indictment seems to

Clearly, the statute prohibits the dissemination of such material using "an interactive computer service for carriage in interstate and foreign commerce" – which clearly does not include (as is alleged in the indictment here) use of such a computer service to tell someone where such purportedly obscene material may be found. In short, the indictment fails to allege that Mr. McCoy disseminated anything that was obscene anywhere, let alone having disseminated it through or into this district.

If the present discussion were limited to the above, the defendant would be moving this Court to dismiss the indictment for failure to state an offense. However, although the single count indictment was brought under § 1462, and alleged Mr. McCoy's liability as a principal; it also mentions aiding and abetting and cites 18 U.S.C. § 2. Aiding and abetting has been described as an alternate theory of liability as opposed to a substantive offense. *See Hamdan v. Rumsfeld*, 548 U.S. 557, 611 (U.S. 2006) ("joint criminal enterprise" [is merely a] theory of liability...a species of liability for the substantive offense (akin to aiding and abetting), not a crime on its own."). An indictment need not even charge a § 2 violation in order to support a jury verdict based on a finding of aiding and abetting—rather, § 2 is embodied in every federal indictment for a substantive offense, whether it be set forth explicitly or implicitly. *See United States v. Taniguchi*, 49 Fed. Appx. 506, 520 (6th Cir. 2002); *United States v. Camacho*, 233 F.3d 1308, 1315 (11th Cir. 2000), *cert. denied*, 532 U.S. 951, 121 S.Ct. 1423 (2001); *United States v. Hill*, 55 F.3d 1197, 1204 (6th Cir. 1995); *United States v. Armstrong*, 909 F.2d 1238, 1241 (9th Cir.), *cert. denied*, 498 U.S. 870, 111 S.Ct. 191 (1990); *United States v. Maselli*, 534 F.2d 1197, 1200 (6th Cir. 1976); *United States v. Lester*, 363 F.2d 68, 72 (6th Cir. 1966), *cert. denied*, 385 U.S. 1002, 87 S.Ct. 705 (1967).

---

require.

Thus, an indictment under a substantive statute and Section 2 is the functional equivalent of an indictment under the substantive law alone. *Armstrong*, 909 F.2d at 1243. Section 2 merely "describes the kinds of individuals who can be held responsible for a crime; it defines the degree of criminal responsibility which will be attributed to a particular individual—however, the nature of the crime itself must be determined by reference to some other statute." *Id*. (emphasis supplied); *see also United States v. Crutchfield*, 379 F. Supp. 2d 913, 917 (W.D. Tenn. 2005). Therefore, since one cannot be indicted under § 2 alone, and since that section merely describes the types of people that can be held responsible for an actual crime—and does not bear at all on the nature of the crime, § 2 cannot be used as a basis for the establishment of § 3237 jurisdiction as a continuing offence. Instead, as discussed *supra*, for purposes of determining the proper venue in a "continuing offense" contemplated by § 3237 – the course of the inquiry to establish proper venue requires that the "'*locus delicti* [of the charged offense] must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" *Rodriguez-Moreno*, 526 U.S. at 278 (U.S. 1999) (emphasis supplied) (quoting *Cabrales*, 524 U.S. at 6-7 (1998)). Hence, the indictment's failure to establish venue in this district suffers from a constitutional infirmity that requires dismissal.

**Conclusion**

Based on the forgoing arguments, Mr. McCoy invokes his right under the United States Constitution (Article III, § 2, cl. 3, and the Sixth Amendment), as echoed in Fed. R. Crim. P. 18; and, pursuant to Fed. R. Crim. P. 12(b)(3)(B), he respectfully requests that this Court dismiss the indictment against him on grounds that it fails to establish constitutional criminal venue.

Dated:  This 22nd day of August, 2008.

                Respectfully submitted,

                /s/ Morad Fakhimi
                MORAD FAKHIMI
                FEDERAL DEFENDERS OF THE
                MIDDLE DISTRICT OF GEORGIA, INC.
                440 Martin Luther King, Jr. Blvd.
                Suite 400
                Post Office Box 996
                Macon, Georgia 31202-0996
                Phone: (478) 743-4747
                Fax: (478) 207-3419
                morad_fakhimi@fd.org
                PA Bar ID. 204228
                DC Bar ID. 974050

**CERTIFICATE OF SERVICE**

    I, Morad Fakhimi, hereby certify that on August 22, 2008, I electronically filed the foregoing Motion to Dismiss the Indictment for Improper Venue with the clerk of Court using the CM/ECF system which will send notification of such to all counsel of record.

    /s/ Morad Fakhimi
MORAD FAKHIMI
FEDERAL DEFENDERS OF THE
MIDDLE DISTRICT OF GEORGIA, INC.
440 Martin Luther King, Jr. Blvd.
Suite 400
Post Office Box 996
Macon, Georgia 31202-0996
Phone: (478) 743-4747
Fax: (478) 207-3419
morad_fakhimi@fd.org
PA Bar ID. 204228
DC Bar ID. 974050