## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

**UNITED STATES OF AMERICA**

**v.**

**FRANK RUSSELL MCCOY**

**Case No. 1:07-CR-18-WLS**

## MOTION TO DISMISS THE INDICTMENT ON MULTIPLE GROUNDS OF PRECLUSION AND ESTOPPEL

Comes now Defendant, Frank Russell McCoy, by and through undersigned counsel, Morad Fakhimi, and moves this Court, pursuant to Fed. R. Crim. P. 12(b)(3)(A)&(B), to dismiss the indictment under which he was charged in the instant case on grounds of preclusion and estoppel; in support of which, Mr. McCoy submits the following.

### Factual Background

On June 13, 2007, a one-count indictment was returned by the grand jury of this district, charging the defendant with having violated 18 U.S.C. § 1462. (Doc. 1). On August 22, 2008, the undersigned noticed an appearance and filed the Defendant's *Motion to Dismiss the Indictment for Improper Venue*. (Doc. 33). On January 23, 2008, this Court issued its *Standard Pretrial Order* which, in relevant part, set forth that the government shall comply with the defendant's discovery requests, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), within a reasonable period of time. (Doc. 11). Three weeks prior to the issuance of this Court's Pre-Trial Order, on January 3, 2008, the government had provided discovery in the case that consisted of the stories themselves. On January 30, 2008, Mr. McCoy filed *Defendant's Request for Production*. (Doc. 20) (requesting, *inter alia*:

documents, or copies or portions thereof, which are within the possession, custody or control of the government, and which are related to the above referenced case (Request No. 3); and, all evidence favorable to the defendant which is material either to the issue of guilt or punishment in the above referenced case (Request No. 6)).

Almost seven months after the defendant's formal request for production, on August 19, 2008, government counsel was contacted via email, and it was inquired whether complete discovery had in fact been tendered—specifically, that the only discovery thus far received consisted of a number of Mr. McCoy's written stories themselves.  Government counsel responded the same day via email, writing:

> "I have to check the file, but we are waiting for you to file any motions you may have.  It's basically 1st amendment stuff. The case is basically the stories, posted on the internet.  I will cc Damon King, the DOJ attorney who is taking the lead."

The following day, the aforementioned Mr. King, a Deputy Division Chief with the Department of Justice, responded via email to the effect that he had the discovery pertaining to this case; Mr. King offered to tender the electronic documents via email or through the mail.  On August 21, 2008, the government's tender of 270 pages of documents relating to the case, which had been formally requested almost seven months prior (Doc. 20), was finally received.

Before receiving these documents, Mr. McCoy was faced with discovery that was limited to the stories themselves, and an indictment that, on its face, failed to establish proper constitutional criminal venue in this district—for which he filed his first motion to dismiss. (Doc. 33).  The last 14 pages of these documents contained a deeply disturbing revelation—namely, that in 2005, the

government had moved to institute these same proceedings against Mr. McCoy in Minnesota regarding the same fictional stories, and that two judges of the United States District Court for the District of Minnesota had issued written opinions and orders declaring that Mr. McCoy's stories were protected speech under the First Amendment, and that the government could not maintain such a prosecution against him as a matter of law.

Yet, notwithstanding the command of two federal judges to the contrary; for one year, two months, and eight days—the time that has passed since Mr. McCoy was indicted in this district—the specter of a second federal criminal prosecution, in a patently improper venue, has nonetheless overshadowed his life. The documents tell a remarkable story, one that reveals that the government's movement against Mr. McCoy can be categorized as nothing shy of a crusade. The factual basis produced by the information contained in these documents gives rise, therefore, to several additional grounds for summarily dismissing this indictment—particularly, under the doctrine of res judicata (or, in the alternative, by application of collateral estoppel, or the law of the case doctrine), as well as by separate application of both equitable and judicial estoppel. Since the genesis of the Georgia proceedings, former counsel for Mr. McCoy had twice moved for enlargement of the allotted time periods for filing motions; former counsel also subscribed to a joint motion requesting that the trial be continued to the October term. (Docs. 22, 24, 26). It begs the question—what if prior counsel had not moved for those extensions of time, and what if Mr. McCoy had insisted on a speedy trial?

Hence, the government's late tender of discovery in this case has seemingly obviated any need for the protective order mentioned in this Court's Order of July 18, 2008. (Doc. 31) (mandating that "Defendant shall file motions for protective order, if any, no later than Monday September 1,

2008).  It is Mr. McCoy's position that the contents of the government's late tendered discovery in this case have obviated the need for a protective order—i.e., two federal judges have already adjudged Mr. McCoy's writing to be outside the reach of § 1462, and well within the protections of the First Amendment.  Should this Court resolve the threshold issue regarding the preclusive effect of those prior judgments against Mr. McCoy; then he would respectfully request that the Court set another deadline  by which motions for protective orders may be filed.

The government's drive to criminalize Mr. McCoy's writing stemmed from its investigation and prosecution of Michael Aaron O'Keefe, who was convicted of advertising, receiving, and possessing child pornography on November 30, 2004, in the United States District Court for the Middle District of Georgia. During the course of the O'Keefe investigation, the government discovered that he had downloaded some of Mr. McCoy's writing. Based upon which, agents of the Department of Homeland Security in Atlanta initiated an investigation into Mr. McCoy for suspected violations of Title 18, United States Code, Section 1462 (Distribution of Obscene Material).

On March 22, 2005, from Albany, Georgia, an agent of the Department of Homeland Security, Mr. Corey Brant, serving in an undercover capacity, sent emails to Mr. McCoy asking for copies of his stories.  The same day, Agent Brant received an email response containing the three web addresses listed in the indictment.  Therefore, in light of Mr. McCoy's arguments presented in his *Motion to Dismiss the Indictment for Improper Venue* (Doc. 33), it is now clear that the government's theory of this case is that Mr. McCoy "aided and abetted" United States Homeland Security Agent Brant in violating 18 U.S.C. §1462.  Another round of emails, to similar effect, were exchanged between Agent Brant and Mr. McCoy on March 10, 2006—except this time, the response

email only contained two web addresses.  According to his own investigative summaries, on March 22, 2005, and again on August 8, 2006, in Albany, Georgia, Agent Brant accessed the websites located at the addresses provided in those response emails and downloaded the stories contained therein.

The final 14 pages included in the documents the government turned over in late August 2008 revealed that on November 16, 2005, Special Agent Ryan Schold of the Department of Homeland Security applied to United States Magistrate Judge Franklin Noel in the District Court for the District of Minnesota for a search warrant as to Mr. McCoy's residence (the application and affidavit submitted in support of that warrant request were <u>not</u> included in discovery, but the warrant request was most probably premised on the March 22, 2005 email exchange with Special Agent Brant in Georgia).  Five days later, Judge Noel issued his *Amended Order*, under seal, denying the application with five-pages of detailed legal reasoning regarding federal obscenity jurisprudence. (Case No. 05-MJ-430FLN; *In the Matter of the Search of the premises known and described as 9694 Parkington Avenue NE, Ostego, MN 55330*—attached hereto as Exhibit A[1]).  After relating that the government's showing of probable cause was limited to a belief that written fictional stories of an obscene nature existed on Mr. McCoy's computer, the court began its analysis by stating that "[i]n order to authorize the search warrant sought here, the Court must conclude that the fictional stories described in the warrant application are themselves criminal..[i]f…not, then there is no probable cause to believe that evidence of a crime will be found on the computers the Agent seeks to search."

---

[1] Mr. McCoy will attach the written opinions and orders of the United States District Court for the District of Minnesotta, as they were received from the government, hereto.  However, certified copies of those judgments are expected to be received from the Clerk's office in Minnesota within a few days, and will accordingly be filed as supplemental addenda to this motion forthwith.

(*Amended Order*, Exhibit A at 2).  Judge Noel went through a detailed analysis of federal obscenity jurisprudence from *Miller v. California*, 413 U.S. 15 (1973), to *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002)—and concluded that in comparison with the facts of *Miller* (*Miller* involved advertising material containing graphic sexual images and text that were "thrust by aggressive sales action to unwilling recipients"), and under the analytical standard of *Miller* and the contemporary community standards discussed in *Ashcroft*, that Mr. McCoy's writings were protected speech under the First Amendment.  (*Amended Order*, Exhibit A, "the Court is unwilling to subscribe to the Government's effort to criminalize the [fictional] written word").

Two days later, on November 23, 2005, the government perfected an appeal of Judge Noel's decision to the Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota. (Case No. 05-MJ-430ADM, *Appeal of the Magistrate's Decision to the District Court and Motion for Sealing Order*—attached hereto as Exhibit B).  In its briefing before Judge Montgomery, the government took exception to what it characterized as "Magistrate Judge Noel's interpretation of [the obscenity statute]…[t]he United Sates now appeals Magistrate Judge Noel's decision…" (Government's Brief on Appeal to the District Judge, Exhibit B at 2).  By far, the majority of the government's brief was concerned with their request that Judge Montgomery's ruling be issued under seal—only a single statement concerned itself with the substance of the government exception to Judge Noel's reasoning—the statement simply declared that under *Miller*, these stories are obscene.  (Government's Brief on Appeal to the District Judge, *compare* Exhibit B at 2, *with* 3-6).  Of particular interest is the declaration in the government's brief that "McCoy emailed the stories…[to] the Middle District of Georgia…" (Government's Brief on Appeal to the District Judge, Exhibit B at 2).  It then becomes clear that the government has claimed inconsistent legal positions

as to the same transaction, in two judicial forums separated by more than two years—asserting principal liability under §1462 in the 2005 Minnesota proceedings (claiming that Mr. McCoy had emailed the stories themselves to someone, presumably to Agent Brant, in Georgia); but alleging nothing more than accessory liability in the instant case (claiming only that he sent an email containing addresses at which such stories may be found). (*Compare* Doc. 1, *with* Exhibit B at 2).

The government's appeal was denied by Judge Montgomery's written *Memorandum Opinion and Order*, filed under seal on December 2, 2005.  (Case No. 05-MJ-430ADM, *Memorandum Opinion and Order*—attached hereto as Exhibit C).  Judge Montgomery's opinion related that "[a]fter a careful review of the materials submitted with the search warrant application, the Court is not prepared to hold that the writings are obscene under the definition of *Miller*…[and that if] *Ashcroft* distinguishes between "between depictions of child abuse that themselves were the product of child abuse and those that are "virtual" images of child abuse...[then such protection, at least, ought to be afforded to written] fictionalized accounts not based on any actual events." (*Memorandum Opinion and Order*, Exhibit C at 4).

The Court also noted that, unlike what was involved in *Miller*, Mr. McCoy's writings were not thrust upon the unwilling public; that the ICS agent specifically requested them in an email; that the writings themselves are replete with warnings that the material contained therein could be considered objectionable—concluding that "the Court agrees with Judge Noel's declaration that he is not willing to participate in the criminalization of the written word, available only to those who specifically seek it out…[g]iven the fictional nature of the writings…the warrant must be denied." (*Memorandum Opinion and Order*, Exhibit C at 4).  Hence, the constitutionality of a §1462

prosecution regarding Mr. McCoy's writing was litigated to a conclusion in November and December of 2005 in the United States District Court for the District of Minnesota.  Due to the fact that this litigation occurred under seal, Mr. McCoy was not aware of it until the government's late discovery in this case revealed the prior litigation.

Three months after this monumental constitutional litigation occurred under seal, and terminated in Mr. McCoy's favor; again, while disguising his identity, Agent Brant engaged in an exchange of emails with Mr. McCoy—still soliciting copies of his stories.  There was an email exchange on March 10, 2006 (attached hereto as Exhibit D)—quite similar to the March 22, 2005 exchange (attached hereto as Exhibit E), except this time, the response email only contained two web addresses.  According to his investigative summaries, on August 8, 2006, in Albany, Georgia, Agent Brant once again accessed the websites located at the addresses provided in those response emails and downloaded the stories contained therein.  Mr. McCoy notes that the August 8, 2006 date is actually specified in the Georgia indictment—crystallizing his understanding that the government's theory of this case has always been that Mr. McCoy's March 22, 2005 email (containing instructions as to where his stories can be found) constituted an aiding and abetting of Agent Brant's August 8, 2006 accessing of those web sites and downloading of the stories. (*compare* Exhibit E, *with* Doc. 1).

In any event, on June 13, 2007, the Grand Jury of the Middle District of Georgia handed down the indictment in the instant case. (Doc. 1).  It is a virtual certainty that the prosecuting authority here did not inform the grand jurors that two federal judges in Minnesota had declared that probable cause of a §1462 violation could not be found as to Mr. McCoy's fictional writings

(available only to those who seek them out) as a matter of federal constitutional law—had the Grand Jury, the Defendant, or this Court been informed of the prior litigation in a timely fashion, this case would currently not exist.

## Res Judicata

Since this Court's sister court in Minnesota entertained litigation in November and December of 2005, to a conclusion, with the proceedings (including an appeal) terminating in Mr. McCoy's favor; and those proceedings regarded the constitutionality of what Judge Noel phrased as the government's "effort to criminalize the [fictional] written word"; Mr. McCoy maintains that the indictment against him must be dismissed on one or another ground of preclusion. "[A] federal court must apply federal law to determine the preclusive effect of a prior federal court decision"; the doctrine of res judicata in federal law prohibits "the filing of claims which were raised…in an earlier proceeding." *United States v. Barnette*, 10 F.3d 1553, 1561 (11th Cir. 1994) (quoting *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir.1990)).

By way of illustration, the full faith and credit statute, 28 U.S.C. § 1738, provides that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State…[;] [the] statute has long been understood to encompass the doctrines of res judicata, or claim preclusion, and collateral estoppel, or issue preclusion." *San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 336 (2005) (internal quotation marks omitted). "Under res judicata, a final judgment on the merits of an action precludes the parties…from relitigating issues that were…raised in that action[;] collateral estoppel [applies] once a court has decided an issue of fact

or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *San Remo Hotel*, 545 U.S. at 336 (2005) (citing *Allen v. McCurry*, 449 U.S. 90, 94-96, 66 L. Ed. 2d 308, 101 S. Ct. 411 (1980). Since the Minnesota litigation culminated in final judgments on the merits, any subsequent claim, anywhere, based on the same showing faces a judgment bar, as claims that are the subject of final judgments on their merits are entitled to res judicata effect (*see United States v. Barnette*, 10 F.3d 1553, 1561 (11th Cir. 1994)); additionally, in any subsequent litigation involving the same class and character of fictional stories (under the same or similar facts), relitigation (by the government) of the constitutional issues that were resolved by the Minnesota court is collaterally estopped, even as to another defendant (e.g., someone other than the defendant who emailed Mr. McCoy's stories to an interested reader).

The law of the case doctrine is closely related to the principle of res judicata. Where the latter prevents collateral attack on the result of a completed lawsuit between the same parties; the former prevents collateral attacks against the court's rulings during the pendency of a lawsuit. Res judicata is inapplicable unless the earlier case proceeded to final judgment on the merits. *See Bradford v. Bronner*, 665 F.2d 680, 682 (5th Cir.1982); 1B J. Moore & T. Currier, Moore's Federal Practice P 0.404[1], at 404-05 (1982). Thus, if the government claims here that the considered written opinions of Judge Noel and Judge Montgomery are not "judgments" entitled to res judicata effect, then the government's continued prosecution of the same purported violation brings its argument under the control of the law of the case doctrine.

In general, preclusion rules serve to enhance judicial efficiency and to assure the finality of judicial determinations. *See Morrow v. Dillard*, 580 F.2d 1284, 1289-91 (5th Cir. 1978). Res judicata, however, is categoric and requires that respect be accorded the prior judgment, while the law of the case doctrine is merely a "rule of practice, based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." *United States v. United States Smelting Refining & Mining Co.*, 339 U.S. 186, 198 (1950). The rationale on which the law of the case doctrine is based is the same as that for *stare decisis*—when a district judge has rendered a decision in a case, and the case is later transferred to another judge, the successor should not ordinarily overrule the earlier decision. *Loumar, Inc. v. Smith*, 698 F.2d 759, 762 (5th Cir. 1983) (citing 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4478 at 788, 794-95 (1981); and, 1B J. Moore & T. Currier, Moore's Federal Practice P 0.404[1], at 404-08 (the law of the case doctrine directs the court's discretion; res judicata supersedes discretion and compels judgment)). The law of the case doctrine is not, however, a barrier to correction of judicial error. It is "a rule of convenience and utility and yields to adequate reason, for the predecessor judge could always have reconsidered his initial decision so long as the case remained in his court…[t]herefore, his decision should not bind a successor with jurisprudential straps stronger than those that compel him to adhere to an opinion once rendered." *Loumar*, 698 F.2d at 762 (5th Cir. 1983) (citing *Abshire v. Seacoast Products, Inc.*, 668 F.2d 832, 837-38 (5th Cir.1982).

By way of example, a state court's determination of probable cause has binding res judicata effect in a subsequent private federal action under 42 U.S.C. § 1983. *See generally Thorson v. Clayton*, 1997 U.S. App. LEXIS 34045 (6th Cir. 1997) (unpublished) ("Under the familiar doctrine of res judicata...the judicial officer's probable cause determination is binding here; the federal courts

may not look behind the state judicial officer's finding that there was probable cause to believe that [] [defendant] had committed an assault...[t]he question of probable cause was settled for them in the state courts of Michigan, and it may not be reexamined here"); *Butler v. Elle*, 281 F.3d 1014, 1020 (9th Cir. 2002) (same); *Ex parte United States*, 287 U.S. 241, 250 (U.S. 1932) (holding that due to the conclusive nature of the probable cause determination, a refusal of the trial court to issue a warrant of arrest, pursuant to an indictment fair on its face and returned by a properly constituted grand jury is, in reality and effect, a refusal to permit the enforcement of the law); *United States ex rel. Kassin v. Mulligan*, 295 U.S. 396, 400 (U.S. 1935) (It is because of this conclusive nature of the probable cause determination that an arrestee is not entitled to a preliminary hearing before a magistrate if the grand jury has indicted him); *Rodriguez v. Ritchey*, 556 F.2d 1185, 1191 (5th Cir. 1977) (plurality opinion); *Rodriguez*, 556 F.2d at 1204 (5th Cir. 1977) (Coleman, J., dissenting) (characterizing the plurality's position as "in effect, preclude[ing] Ms. Rodriguez from litigating her constitutional claim because the disputed issues were resolved unfavorably to her in an action to which she was not a party, at which her adversary presided, and at which the decision makers were lay persons who had before them only inaccurate and incomplete information"); *Mathues v. United States*, 19 F.2d 7, 9 (3d Cir. 1927) ("in the interest of orderly procedure, the decision of one committing magistrate in the absence of special circumstances should be conclusive, on the same state of facts, upon another of co-ordinate jurisdiction"); *Hilfirty v. Shipman*, 91 F.3d 573 (3d Cir. 1996) (criminal proceedings are *terminated* in favor of the accused by (a) a discharge by a magistrate at a preliminary hearing, or (b) the refusal of a grand jury to indict, or (c) the formal abandonment of the proceedings by the public prosecutor, or (d) the quashing of an indictment or information, or (e) an acquittal, or (f) a final order in favor of the accused by a trial or appellate court.) (citing

Restatement (Second) of Torts § 659 (1976)); *Kossler v. Crisanti*, 2005 U.S. Dist. LEXIS 17671 (W.D. Pa. Aug. 23, 2005) (the *Hilfirty* court's discussion of what amounts to a "termination in favor of the accused" is still good law); *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 727 (2d Cir. 2001) (the New York state court affirmation of the agency's finding of no probable cause would preclude federal litigation based on the same facts); cf. *Ornellas v. Oakley*, 618 F.2d 1351, 1356 (9th Cir. 1980) ("A reversed or dismissed judgment [which had encompassed a probable cause determination] cannot serve as the basis for a disposition on the ground of res judicata or collateral estoppel.").

Naturally, if federal courts afford state-court probable cause determinations (that constitute final judgments on the merits) res judicata effect – then surely a federal court would extend the same to another federal court. *See, e.g., Tarka v. Time, Inc. Magazine Co.*, 1991 U.S. Dist. LEXIS 343, 16-18 (S.D.N.Y. 1991) (holding that federal law determined the preclusive effect a prior federal judgment has on an action; that res judicata barred the action because the two cases were based upon the same facts; and that the prior litigation provided the party against whom the doctrine was applied with a full and fair opportunity to litigate the issues). Therefore, under federal law a valid final judgment is res judicata and acts as an absolute bar to a subsequent action between the same parties on the same cause of action—the judgment precludes not only issues that were raised, but also those that could have been raised. *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).

Thus, by bringing this second prosecution, the government attempts to avoid the effects of res judicata, collateral estoppel, and the law of the case doctrine where such avoidance is not possible—the case is necessarily precluded under one or another theory. The earliness of the failure

which met the government's abortive institution of the 2005 proceedings does nothing to detract from the fact that the written opinions of Judge Noel and Judge Montgomery constitute final and binding judgments as to the government's claim that Mr. McCoy's fictional writings (under the circumstances they exist—available only to those who seek them out, and not sent to unwilling recipients as was the case in *Miller*) are not within the reach of 18 U.S.C. §1462, and are protected speech under the First Amendment. Without material differences in the substance of the claim, which is not the case in the instant prosecution, the government is barred from attempting to relitigate the claim while shopping around the country for a favorable ruling from a court that it believes may be more friendly to its "effort to criminalize the [fictional] written word." (*Amended Order*, Exhibit A at 4-5) (citing disapprovingly, *inter alia*, *United States v. One Book Entitled Ulysses by James Joyce*, 72 F.2d 705 (2nd Cir. 1934)).

The basic difference between claim preclusion and issue preclusion is simply put: claim preclusion applies to whole claims, whether litigated or not, whereas issue preclusion applies to particular issues that have been contested and resolved. *See* 18-131 Moore's Federal Practice - Civil § 131.13. Claim preclusion is broader in scope than issue preclusion as to the claims that come within its purview, but narrower in scope as to the parties to whom the doctrine can be applied. *Id.* Issue preclusion precludes litigation of issues actually litigated and necessary to the outcome of the prior case, even if such issues are subsequently presented as part of a different "claim". *Id.* With only a few narrow exceptions, claim preclusion operates only between the parties to the prior litigation, while a stranger to the first action may even invoke issue preclusion against a party to that action. *Id.*; *see also San Remo Hotel*, 545 U.S. at 336 (2005); *Allen*, 449 U.S. 90, 94-96 (1980).

Either those federal judicial opinions admonishing the government that Mr. McCoy's writings are constitutionally protected speech are binding final judgments in the same matter, between the same parties, and are entitled to the full preclusive bar of the res judicata effect; or alternatively, the United States government's continued attempt to criminalize Mr. McCoy's writings (in various venues but upon the same showing regarding the same matter) constitute a *de facto* single proceeding for purposes of analysis under the law of the case doctrine; or, at the very least, it cannot be doubted that the Minnesota court, in 2005, decided an issue of law necessary to its judgment, which will even preclude relitigation of the issue in a suit on a *different* cause of action involving only one party to the first case (let alone both parties).  The government's case, therefore, finds itself in a catch-22.  In short, this matter was already litigated, and the government lost.

### Judicial Estoppel

On appeal from Judge Noel's decision, the government's brief declared that "McCoy emailed the stories [themselves]…[to] the Middle District of Georgia…" (Government's Brief on Appeal to the District Judge, Exhibit B at 2).  In the instant case, brought presumably pursuant to the email exchanges of March 22, 2005, the government has only alleged that Mr. McCoy sent an email into this district, instructing Agent Brant where his stories may be found.  Therefore, the government has claimed inconsistent legal positions as to the same transaction, in two judicial forums, separated in time by more than two years—asserting principal liability under §1462 in the 2005 Minnesota proceedings (claiming that Mr. McCoy had emailed the stories themselves to someone, presumably to Agent Brant, in Georgia); but alleging nothing more than accessory liability in the instant case (claiming only that Mr. McCoy sent an email containing addresses at which such stories may be

found). (*Compare* Doc. 1, *with* Exhibit B at 2).  Since the Minnesota and Georgia allegations were both premised on the March 22, 2005 email sent to Agent Brant—this inconsistency gives rise to an entirely different species of estoppel (the inconsistency is glaring due to the fact that the March 10, 2006 email that was received by Agent Brant does not comport with what is alleged in the present indictment—the 2006 email contained only two web addresses, where the March 22, 2005 email contained the exact three web addresses reflected in the indictment).  Hence, owing to the propagation of a certain position in the Minnesota proceedings, the government ought to be judicially estopped from asserting a factually inconsistent position in these proceedings.

"Judicial estoppel is an equitable doctrine invoked at a court's discretion, designed to protect the integrity of the judicial process." *Stephens v. Tolbert*, 471 F.3d 1173, 1177 (11th Cir. 2006) (citations omitted). A district court may invoke the doctrine "to prevent a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Id.* "[T]he circumstances under which judicial estoppel should be invoked are not reducible to a general formulation of principle," but courts have traditionally looked at three factors: (1) whether a later position asserted by a party was clearly inconsistent with an earlier position; (2) whether a party succeeded in persuading a court to accept an earlier position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) whether the party with an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id*. See also *United States v. Campa*, 459 F.3d 1121, 1152 (11th Cir. 2006).

Here, the position asserted by the government in the present indictment is clearly inconsistent with that which it alleged in Minnesota (alleging principal liability in 2005 in Minnesota, and accessory liability in Georgia in 2007—both premised on a March 2005 email from Mr. McCoy that informed Agent Brant where such stories may be found).  Additionally, the government's allegation that Mr. McCoy emailed the stories themselves, made before the Minnesota courts, was taken as true for the purpose of their constitutional analysis—therefore, the government did in fact succeed in "persuading" a court to accept the prior inconsistent position.  Lastly, Mr. McCoy maintains that the inconsistency does in fact impose an "unfair detriment", to say the least.  It is unfair that the government even instituted these proceedings in the first place, while knowing that they were clearly precluded (while unjustifiably keeping evidence of the preclusion from him for seven months); and basing the second case on the same transaction that gave rise to the first, but alleging an inconsistent position in the second (retreating from a theory of principal to accessorial liability).  If this is the government's attempt to escape the reach of the preclusion doctrines—if, by this inconsistency in the positions alleged, the government means to somehow claim that this is a new and unrelated case—then, Mr. McCoy asserts that therein would lie the "unfair detriment" required for judicial estoppel, such "that judicial acceptance of an inconsistent position in a later proceeding would [not] create the perception that either the first or the second court was misled."  *Stephens v. Tolbert*, 471 F.3d 1173, 1177 (11th Cir. 2006).

### Equitable Estoppel

The government's conduct in this case is uncommon—to such an extent that the task of locating pertinent case authority has proven difficult.  However, two federal cases were identified

that remotely touch on such attempts at relitigation of criminal matters that are the subject of a prior final judgment.

In *United States v. Davis*, 346 F. Supp. 435, 442 (S.D. Ill. 1972), the government, upon the same showing, applied to a second Magistrate for a search warrant that had been previously denied by the first Magistrate to whom it was presented—furthermore, the second judge was apprised of the fact that the application had been denied by another Magistrate. *Id*. The *Davis* court held that the decision of the first Magistrate was a "judicial decision…final and binding"; and the denial by the first Magistrate "of the application for a [] search equitably estopped [the second] Magistrate [] from issuing a search warrant on the exact same showing." *Id*. (citing *Jaben v. United States*, 381 U.S. 214, 224, 85 S. Ct. 1365, 14 L. Ed. 2d 345 (1965); *Biondo v. United States*, 348 F.2d 272, 274 (8th Cir. 1965); *United States v. Romano*, 241 F. Supp. 933, 937 (S.D. Maine 1965); *Tidewater Oil Company v. Jackson*, 320 F.2d 157, 161 (10th Cir. 1963); and, *Landreth v. Wabash Railroad Company*, 153 F.2d 98 (7th Cir. 1946). The *Davis* case was decided on appreciably different facts (making it worse for the government in this case); there, the government had the courtesy of informing the second Magistrate of the decision by the first—the defendant seriously doubts if the Grand Jury of this district or U.S. Magistrate Judge Hodge (to whom applications of arrest and search warrants have been made in this case) were informed of the decisions of the Minnesota courts. Another appreciable difference between the instant case and the facts under which *Davis* was decided, is the fact that the prior decision in this case includes the written opinion and order of a United States District Judge—hence, this is not exactly an issue of competing opinions of co-equal Magistrates. In the instant case, due to the government's conduct, Magistrate Judge Hodge was applied to for a search warrant on the same showing as was made in Minnesota; however, Judge

Hodge was not informed of the prior denial.  Therefore, the reasoning applied by the *Davis* court—holding that the government is equitably estopped from disregarding the opinion of one Magistrate and soliciting a better result from another on the same showing—would control the instant case with even greater conviction and force.

In *United States v. Savides*, 658 F. Supp. 1399 (N.D. Ill. 1987), the defendant asserted that a first Magistrate's initial denial of the search warrant equitably estopped the government from submitting the identical application to a second Magistrate for consideration—taking the position that the initial denial of probable cause by one magistrate operated as a final order precluding a second judicial officer from considering the same application without additional evidence to support a different conclusion.  *Id*. at 1404.  The *Savides* court held that:

> "Applying principles of collateral estoppel or res judicata to the denial of a search warrant would be similar to applying the principles to the decision of a grand jury to indict after a magistrate has dismissed a complaint for lack of sufficient evidence. In the latter case, the law is clear that the refusal of a judicial officer to sustain a criminal complaint does not preclude a grand jury from subsequently hearing the same evidence and returning an indictment **so long as the grand jury is informed of the first's decision**...In light of the fact that Magistrate Weisberg's initial denial of the search warrant for Room 102 was not a final order [based on the reasoning that such a decision is not appealable], this court is unable to find principles of collateral estoppel or res judicata relevant. This court believes that like a situation where a judicial officer fails to sustain a criminal complaint at a preliminary hearing, the initial denial of a warrant does not preclude the government from presenting the same evidence to a second judicial officer **so long as the government makes known the application was previously denied**."

*Id.* at 1404 (emphasis supplied).  Mr. McCoy directs the Court's attention to two points of interest that arise from *Savides*.  First, in taking exception to the reasoning of the *Davis* court, the *Savides* court assumed that:

> "[t]he linchpin of the *Davis* holding and a prerequisite to applying principles of collateral estoppel and res judicata are the existence of a final decision on the merits. An essential element to a final order is appealability. Principles of res judicata and collateral estoppel preclude the same parties from relitigating identical issues in courts of first impression partly because an appellate process exists to correct legal error committed below. Unless parties are accorded the right to appeal the judgment of a judicial officer, the decision is not final and collateral estoppel and res judicata principles do not apply."

*Id.*, *aff"d sub nom*, *United States v. Pace*, 898 F.2d 1218, 1230 (7th Cir. Ill. 1990) (under the premise that "that the government did not withhold material information")*.*  Mr. McCoy notes that Magistrate Judge Noel's *Amended Order* was in fact the subject of an appeal perfected by the government; and furthermore, that U.S. District Judge Montgomery's *Memorandum Opinion and Order* affirmed the lower court's decision—representing an opportunity where "the right to appeal the judgment of a judicial officer" was exercised by the government.  Second, Mr. McCoy notes that the *Savides* court took great pains to repeat that its holding was also premised on circumstances where the government "makes known the application was previously denied"; in the instant case, there is no indication that the government let anyone know that its application on the same showing was previously denied, subjected to an appeal, and once again denied.

Therefore, this issue in the instant case is not necessarily able to be completely controlled by *Davis*, *Savides*, or *Pace* – not directly anyway.  This is not a case where the government was shopping for a friendly Magistrate within the same courthouse—on the contrary, the government

applied to and was rejected by a Magistrate in Minnesota, then it appealed that decision to a District Judge and was rejected again; and then (on the same showing) the government convened a Grand Jury across the country and secured an indictment (along with the subsequent application for and securing of arrest and search warrants) without informing the Grand Jury or Magistrate Judge Hodge that a District Judge in Minnesota had already ruled (on appeal) on this matter. *Davis*, however, does provide a good starting point for this Court's analysis of the applicability equitable estoppel to the facts of the present case.   Clearly, *Davis*, *Savides*, and *Pace* would all disapprove of the government's failure to inform the Georgia judicial authorities (or the defendant for that matter) of the prior Minnesota judgments—furthermore, all three cases dealt with whether one Magistrate's decision was binding on another.  None dealt with the question as to whether a District Judge's final decision (upholding a Magistrate's decision on appeal) will bind a subsequent Magistrate or Grand Jury from inquiring into the matter upon the same showing.  Hence, Mr. McCoy maintains that in the instant case the government was equitably estopped from convening the Middle District of Georgia Grand Jury upon the same showing that was the subject of the Judge Montgomery's ruling on appeal.

### Conclusion

Based on the forgoing arguments, Mr. McCoy maintains that the Executive's conduct in this case constitutes (at the very least) a continuing violation of his rights under the First, Fourth, Fifth, Sixth, and Eighth Amendments to the United States Constitution—requiring immediate and summary dismissal.   Therefore, pursuant to Fed. R. Crim. P. 12(b)(3)(A)&(B), Mr. McCoy respectfully requests that this Court dismiss the indictment against him on grounds that it is

precluded by the judgments of another federal court, either by application of res judicata, collateral estoppel, or the law of the case doctrine; as well as on grounds that this prosecution ought be both judicially and equitably estopped.

        Dated:  This 2nd day of September, 2008.


                                        Respectfully submitted,


                                        /s/ Morad Fakhimi
                                        MORAD FAKHIMI
                                        FEDERAL DEFENDERS OF THE
                                        MIDDLE DISTRICT OF GEORGIA, INC.
                                        440 Martin Luther King, Jr. Blvd.
                                        Suite 400
                                        Post Office Box 996
                                        Macon, Georgia 31202-0996
                                        Phone: (478) 743-4747
                                        Fax: (478) 207-3419
                                        morad_fakhimi@fd.org
                                        PA Bar ID. 204228
                                        DC Bar ID. 974050

**<u>CERTIFICATE OF SERVICE</u>**

I, Morad Fakhimi, hereby certify that on September 2, 2008, I electronically filed the

foregoing Motion to Dismiss the Indictment on Multiple Grounds of Preclusion and Estoppel

with the clerk of Court using the CM/ECF system which will send notification of such to all

counsel of record.

<u>/s/ Morad Fakhimi</u>
MORAD FAKHIMI
FEDERAL DEFENDERS OF THE
MIDDLE DISTRICT OF GEORGIA, INC.
440 Martin Luther King, Jr. Blvd.
Suite 400
Post Office Box 996
Macon, Georgia 31202-0996
Phone: (478) 743-4747
Fax: (478) 207-3419
morad_fakhimi@fd.org
PA Bar ID. 204228
DC Bar ID. 974050