IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FRANK RUSSELL MCCOY | Case No. 1:07-CR-18-WLS |

## DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE TO THE MOTION TO DISMISS THE INDICTMENT FOR IMPROPER VENUE

Comes now Defendant, Frank Russell McCoy, by and through undersigned counsel, Morad Fakhimi; and, pursuant to this Court's *Standard Pretrial Order* (Doc. 11 at 1), herewith files his reply to the government's response (Doc. 43) to his *Motion to Dismiss the Indictment on Multiple Grounds of Preclusion and Estoppel* (hereinafter, the "Second Motion to Dismiss"). (Doc. 34). As a preliminary matter – having recently received from the Clerk of the District Court for the District of Minnesota, certified copies of all documents in the 2005 litigation of this same case in that district (Case No. 05-MJ-430-ADM – Docs. 1 - 10), Mr. McCoy attaches them as Exhibits "A" through "J" hereto.

The government's response begins by erroneously maintaining that "[r]educed to its essence, the defense claim is that...Judge Noel's order denying Agent Schold's application for a search warrant in Case No. 05-MJ-430 (FLN) in the District of Minnesota and Judge Noel's opinion that words alone cannot be obscene, and (2) the Honorable District Court Judge Ann G. (sic) Montgomery's order denying the Government's appeal and her adoption of Judge Noel's...order somehow precludes (sic) this prosecution...in the Middle District of Georgia." (Doc. 43 at 17). This

1

is neither a correct characterization of the positions expressed by Mr. McCoy in his Second Motion to Dismiss (with respect to the preclusive effects of the prior litigation, or the estoppels arising from the government's conduct), nor is it a correct characterization of the judicial opinions rendered in the course of that litigation. The government's erroneous statement notwithstanding; "[r]educed to its essence," the prior litigation, quite correctly arrived at the conclusion that Mr. McCoy's stories (mere <u>descriptions</u>), only being available to those who seek them out ( and replete with disclaimers), as well as being fictional in nature and not based on any actual events – must be afforded the same First Amendment protection that was extended by *Ashcroft v. Free Speech Coalition*, 533 U.S. 234 (2002) to <u>visual depictions</u> that were artistic renditions not based on actual people or events. (*See* Exhibits "D" & "H" hereto). This is not remotely the same as "reducing" the judicial opinions, in which the prior litigation resulted, to the simple statement that "words alone cannot be obscene" – as the government attempts to do here.[1]

The government next complains that Mr. McCoy "has not provided any authority for its proposition that the denial of an application for a...warrant in...Minnesota constitutes a final judgment precluding...a Middle District of Georgia grand jury from returning an indictment..." (Doc.

---

[1]Tangentially, Mr. McCoy directs the Court's attention to the fact that "obscenity" statutes fall into three distinct categories of enactment: (1) the various state obscenity statutes, enacted under the states' general police powers; (2) the federal ban on the importation of obscene matter, giving rise to an *in rem* action against the materials themselves; and, (3) the federally criminalized transportation of obscene materials in interstate commerce, the subject of the instant prosecution. Mr. McCoy notes that the federal criminal statute has a radically different principle justifying liability thereunder than its state counterparts – namely, nuisance. Since originally enacted by Congress in 1873, this proscription was effected to protect the public from unwanted exposure to obscenity. (*See* Section 148 of Act of July 8, 1873). This is a distinction of which Judge Montgomery and Judge Noel were clearly cognizant (observing that Mr. McCoy's writings were only available to those who sought them out, and were replete with disclaimers as to their content).

43 at 17 - 18) (internal quotation marks omitted).  Mr. McCoy again maintains that the government is mistaken and points to his citations discussing the binding res judicata effect, in federal litigation, of prior state court probable cause determinations (Doc. 34 at 11 - 13); and also to his discussion of a published federal district court case from the Southern District of Illinois that maintained, flatly, that a magistrate judge's denial of a search warrant application is precluded if presented again upon the same showing (Doc. 34 at 18).  Of course, a search warrant application may be denied in more ways than one – and, those differences will give rise to different consequences. Thus, if an agent approaches a federal magistrate, and upon presenting an application for a warrant, is simply turned away by the judge's refusal to sign the warrant – does that refusal constitute a final judgment which would preclude a subsequent attempt to present the same exact application to the same or another magistrate?  That question was answered in the *affirmative* by the court in *United States v. Davis* 346 F. Supp. 435, 442 (S.D. Ill. 1972) (preclusion by equitable estoppel, owing to the fact that the second presentation of the warrant application was upon the exact same showing as the first). The same question, however, was answered in the *negative* by the court in *United States v. Savides*, 658 F. Supp. 1399, 1404 (N.D. Ill. 1987), on grounds that no preclusive effect could attach to a magistrate's refusal to sign a warrant if the government had not been afforded the right to appeal the judgment of the judicial officer. *Id*. ("an essential element to a final order is appealability").  Therefore, *Davis* would give preclusive effect to a simple refusal to sign a warrant – *Savides* would give the same preclusive effect to a simple refusal to sign a warrant, so long as the government is afforded the opportunity to take an appeal from the refusal. What then, would be the effect of a federal magistrate's refusal to sign a warrant, the reasons for which were memorialized in a written order; then, subjected to an appeal taken by the government to the district judge; following which, the

appeal was denied on its merits, and the reasoning for that denial on constitutional grounds was also memorialized in a memorandum opinion and order of the district court? There can be no doubt, under any scheme of analysis, that what happened in the Minnesota federal court had all the hallmarks of a final judgment between these same parties, on the same matter. It could be argued, *Davis* and *Savides*, notwithstanding, that a simple refusal to sign a warrant is not a final judgment — it might even be arguable that a simple refusal to sign, followed by an appeal resulting in another simple refusal to sign, is still not a final judgment — Mr. McCoy maintains, however, that the written opinions and orders of two federal judges, separated by an appeal, must be construed to constitute a final judgment.

Policies that promote the finality of judgments dominate Anglo-American jurisprudence — whether in the context of analysis under 28 U.S.C. 1291 (only "final" judgments are appealable), or in consideration of the applicability of preclusion doctrines (only "final" judgments are *res judicata* bars to re-litigation). "Judicial finality -- the predicate for res judicata -- [therefore,] arises only from a final decision rendered after the parties have been given <u>a reasonable opportunity to litigate</u> a claim before a court of competent jurisdiction." *Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 328 n. 31 (5th Cir. Tex. 2006) (emphasis supplied) (citing *Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.*, 575 F.2d at 537-538 (5th Cir 1978); *see also*, *Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 395 (5th Cir. 2001) ("Traditional rules of preclusion as adopted in federal case law-whether under the doctrine of collateral estoppel or res judicata-require that the party to be estopped from re-litigating a claim have had <u>a full and fair opportunity to litigate</u> the issue") (emphasis supplied); and, *see e.g.*, *Stone v. Powell*, 428 U.S. 465, 482 (U.S. 1976) ("where the State has provided <u>an opportunity for full and fair litigation</u> of a Fourth Amendment claim, the

Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial") (emphasis supplied). Consequently, "[t]he Supreme Court has explained that following a <u>full and fair opportunity to litigate</u>, [res judicata] protects [a party's] adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1355 (11th Cir. Fla. 2000) (internal quotation marks omitted and emphasis supplied) (*quoting Montana v. United States*, 440 U.S. 147, 153-54 (1979)).

Furthermore, "[r]es judicata requires…a final judgment which[,] "[t]o be a final order of judgment, there must be 'some clear and unequivocal manifestation by the trial court of its belief that the decision made, so far as [the court] is concerned is the end of the case.'" *Illig v. Union Elec. Co.*, 334 F. Supp. 2d 1151, 1155 (E.D. Mo. 2004) (*quoting Goodwin v. United States*, 67 F.3d 149, 151 (8th Cir. 1995); *quoting*, *Fiataruolo v. United States*, 8 F.3d 930, 937 (2d Cir. 1993) (the court had fully adjudicated all the issues before it, leaving nothing remaining for it to do with respect to this litigation; *citing Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981); and, *Arp Films, Inc. v. Marvel Entertainment Group*, 905 F.2d 687, 689 (2d Cir. 1990) (*per curiam*) (noting that a final decision leaves nothing for a trial court to do but ministerial tasks)). Mr. McCoy, therefore, maintains that such was the case here — specifically, that the government was given a full and fair opportunity to litigate its case by the Minnesota federal court (the litigation was given serious deliberation, written opinions and orders were issued, and an appeal was taken), and that Judge Montgomery's memorandum opinion and order (affirming Judge Noel's order) fully adjudicated all the issues before that court, leaving nothing remaining to be done with respect to the litigation.

Hence, the opinion and order of the District Judge, following an appeal taken by the government thereto, constitute a final judgment, and present a *res judicata* bar to re-ligation of the case.[2]

Though the government's response is silent as to any claim on its part that Mr. McCoy was not a "party" to the prior litigation, as the case was styled, "In re [his address]" — the Defendant notes that it was not an *in rem* action that the government was instituting — but, that the search warrant proceedings were incident to, and a necessary ingredient of, an *in personam* criminal action. In any event, should this Court chose to adopt the view that identity of parties has changed between the Minnesota and Georgia litigation; then issue preclusion would arise and Mr. McCoy notes (in addition to the arguments presented in his Second Motion to Dismiss) that "there is some authority that the requirement [of finality of the prior judgment] is more relaxed for collateral estoppel or issue preclusion." *Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.*, 575 F.2d 530, 538 n.11 (5th Cir. 1978) (citing Restatement Second of Judgments, § 41 comment g (Tent. Draft No. 1, 1973), and authority cited therein).

The government then goes on to maintain that "if the denial of an application for a search warrant does not preclude the Government from presenting the very same application to a second magistrate in the same district...the denial of a search warrant application could not possibly constitute a final judgment" (Doc. 43 at 18) (citing *United States v. Pace* 898 F.2d 1218, 130-31 (7th

---

[2]*See also United States v. One Obscene Book Entitled "Married Love"*, 48 F.2d 821, 822 (D.N.Y. 1931) (decision in another case relating to the same book is res judicata); and, *United States v. Various Articles of Obscene Merch.*, 536 F. Supp. 50, 53 (S.D.N.Y. 1981) (fact that certain films have previously been found to be obscene renders the doctrine of res judicata applicable notwithstanding the fact that addressees and claimants are different; forfeiture actions are by naute *in rem*, and it is the character of the film, not the identity of the addressee or claimant, which is significant).

Cir. 1990); *Savides* 659 F. Supp. at 1402; and, *Davis*, 346 F. Supp. at 442). However, none of the three cases cited by the government can support that proposition — first, *Davis* is improperly cited, as it stood for the exactly converse proposition — second, the *Savides* litigation (*aff'd sub nom*, *United States v. Pace*, 898 F.2d 1218, 1230 (7th Cir 1990) was expressly premised on the points that the government has to make it known that the application was previously denied; which, of course, was not done in the instant case — furthermore, *Savides* and *Pace* were also premised on the fact that the government had not been afforded the opportunity to appeal the first warrant denial.

The government then proceeds to maintain that "it is unnecessary to discuss in extensive detail why Judge Noel's opinion that words alone cannot be obscene, and [why] Judge Montgomery's adoption of that opinion, are clearly erroneous." (Doc. 43 at 19). As discussed *supra*, the government's characterization of the holdings of the Minnesota judges' opinions is erroneous (to say the least) — in support of it's contention that "words alone can[] be obscene," the government cites *United States v. Fletcher*, No. 06-329 (W.D. Pa. filed Sept. 26, 2006) and *United States v. Whorley*, No. 05-114 (E.D. Va. filed March 23, 2005), characterizing both as convictions under 18 U.S.C. 1462(a). (*see* Doc. 43 at 20-21). The government's response fails to mention, however, that the defendant in *Fletcher* entered a guilty plea pursuant to a plea agreement (*see United States v. Fletcher*, 2:06-cr-00329-JCF, Docs. 73 and 74 (W.D. Pa. 2008)) hence, *Fletcher* has no precedential value, even to support the government's misapprehension of the holdings of the Minnesota federal judges. As for the government's citation of *Whorley*, that case is currently before the United States Court of Appeals for the Fourth Circuit on a number of issues (including whether the conviction on the counts involving viewing of purportedly obscene cartoon drawings is in contravention of the rule established in *Ashcroft v. Free Speech Coalition*, 533 U.S. 234 (2002));

and, that case involved much more than a section 1462(a) prosecution. In *Whorley*, the defendant was, in addition to the Japanese anime cartoons, convicted of receiving through the Internet fourteen photographs of naked minors, in violation of 18 U.S.C. § 2252(a)(2), as well as exchanging twenty sexually-graphic e-mails with a consenting adult, in purported violation of 18 U.S.C. § 1462. (*See United States v. Dwight E. Whorley*, No. 06-4288 (4th Cir., docketed March 28, 2006, *Appellant's Brief* at 4-5) (The sentence consisted of the following terms of incarceration, to be served concurrently:  (i) 5 years for viewing obscene Japanese anime cartoons in violation of § 1462 (Counts 1 through 20); (ii) 20 years for viewing the same cartoons under the enhanced penalties mandated for child pornography violations under § 1466A (Counts 21 through 40); (iii) 20 years for viewing photographs of naked minors in violation of § 2252 (Counts 42 through 55); and (iv) 5 years for exchanging obscene e-mails over the Internet in violation of § 1462 (Counts 56 through 75))). Since *Whorley* is still pending, and since *Fletcher* involved a guilty plea — neither case serves in any way to bolster the government's contention that the judgments rendered by Judge Montgomery and Judge Noel were "clearly erroneous."

Lastly, the government's response comes to a conclusion by briefly addressing Mr. McCoy's arguments regarding judicial estoppel (asserted in *Second Motion to Dismiss*, Doc. 34 at 15-17). The government simply dismisses the cited instance in the 2005 Minnesota litigation (*see Second Motion to Dismiss*, Doc. 34 at 15-16; citing *Government's Brief on Appeal from Magistrate's Denial*, dated November 23, 2005, Exhibit "E" attached hereto) wherein the government maintained that Mr. McCoy had emailed the stories themselves to Georgia (in contrast with its inconsistent position before this Court upon the same showing, that he merely instructed Agent Brant where to find the stories) — the government dismisses the inconsistent positions as an "inartful colloquial

8

summarization of the facts set forth in Agent Shold's affidavit, which were the same facts...presented to the grand jury sitting in the Middle District of Georgia..." (Doc. 43 at 21).  However, this "inartful colloquial summarization" was repeated in the government's May 9, 2008, *Motion to Unseal* the Minnesota litigation – over two years and five months later. (*See* Government's *Motion for Order to Unseal the Case*, Exhibit "I" at 1, attached hereto) (relating, again, to the Minnesota federal court that "Mr. McCoy had posted these stories on the Internet and had also sent them via email to an undercover police officer in Georgia."). These purportedly erroneous characterizations were consistent with one another and were separated by almost two-and-a-half years in time — and appear to be fairly able to be characterized as the government's consistently asserted position before that court.  Consequently, the government's casual dismissal of the inconsistent positions asserted before the Minnesota court and this Court, becomes considerably less tenable owing to the fact that the representation was made twice.

## Conclusion

Based on the forgoing arguments, and those made in his *Motion to Dismiss the Indictment on Multiple Grounds of Preclusion and Estoppel* (Doc. 34), Mr. McCoy maintains that nothing in the government's response serves to undermine his arguments asserting that this prosecution is precluded and barred by the 2005 judgment of the Minnesota District Court; that re-litigation of the issue of obscenity as to those stories is collaterally estopped; and that the government's conduct gives rise to both equitable and judicial estoppel — and hence, the indictment in the instant case ought to be summarily dismissed.

Dated: This 26th day of September, 2008.

Respectfully submitted,

/s/ Morad Fakhimi

MORAD FAKHIMI
FEDERAL DEFENDERS OF THE
MIDDLE DISTRICT OF GEORGIA, INC.
440 Martin Luther King, Jr. Blvd.
Suite 400
Post Office Box 996
Macon, Georgia 31202-0996
Phone: (478) 743-4747
Fax: (478) 207-3419
morad_fakhimi@fd.org
PA Bar ID. 204228
DC Bar ID. 974050

**CERTIFICATE OF SERVICE**

  I, Morad Fakhimi, hereby certify that on September 26, 2008, I electronically filed the foregoing Reply to the Government's Response to the Defendant's *Motion to Dismiss the Indictment on Multiple Grounds of Preclusion and Estoppel* with the clerk of Court using the CM/ECF system which will send notification of such to all counsel of record.

              /s/ Morad Fakhimi
              MORAD FAKHIMI
              FEDERAL DEFENDERS OF THE
              MIDDLE DISTRICT OF GEORGIA, INC.
              440 Martin Luther King, Jr. Blvd.
              Suite 400
              Post Office Box 996
              Macon, Georgia 31202-0996
              Phone: (478) 743-4747
              Fax: (478) 207-3419
              morad_fakhimi@fd.org
              PA Bar ID. 204228
              DC Bar ID. 974050