IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FRANK RUSSELL MCCOY | Case No. 1:07-CR-18-WLS |

## MOTION TO DISMISS INDICTMENT ON GROUNDS OF GOVERNMENT MISCONDUCT BEFORE THE GRAND JURY

Comes now Defendant, Frank Russell McCoy, by and through undersigned counsel, Morad Fakhimi, and pursuant to Fed. R. Crim. P. 12(b)(3), moves this Court to dismiss the indictment on grounds of prosecutorial misconduct that occurred before the grand jury. Mr. McCoy maintains that the government insufficiently instructed the Grand Jury on the facts and law necessary for it to independently make its probable cause determination – particularly, that the Grand Jury's deliberations were misled by the government's material omission of the 2005 Minnesota litigation and judgment, and the attendant possible legal consequences and implications thereof – and, that such failure substantially influenced the Grand Jury's decision to indict, in derogation of his rights under the Fifth Amendment. In support of which, the Defendant submits the following:

The government procured a one-count indictment in the instant case from the Grand Jury of this district on June 13, 2007. (Doc. 1). On September 12, 2008, Mr. McCoy filed his *Motion to Unseal the Transcripts of the Grand Jury Proceedings* (Doc. 41) (hereinafter, the "Motion to Unseal") – wherein he maintained that: (1) his showing of a "particularized need" capable of justifying the unsealing of the proceedings was manifest in his need to determine whether the

1

prosecution had informed the Grand Jury of its failed attempt to institute these same proceedings, upon the same showing, in Minnesota in 2005, as well as of the legal ramifications of the existence of a prior final judgment on the same subject between the same parties; and (2) that if such an omission was made, the indictment ought to be dismissed owing to the government's incomplete and misleading legal instructions (or lack thereof) that had the patent effect being made with the intent of precluding a line of relevant inquiry by the Grand Jury.

Mr. McCoy notes that the government never filed a formal response to his *Motion to Unseal* – instead, the defense received a letter from government counsel, dated September 29, 2008 (along with 8 pages of Agent Brant's Grand Jury testimony that was not pertinent to the question at bar — i.e., there is neither any mention of the abortive Minnesota litigation to the Grand Jury; nor does government counsel's letter explicitly admit that such an omission was made before the Grand Jury). (*See* Exhibit A at 1, attached hereto – September 29, 2008, letter from government counsel stating, "I have attached the grand jury testimony of Cory Brant in response to your Motion to Unseal...") (emphasis supplied). Furthermore, in its filing of September 22, 2008, the government effected a *de facto* admission that the facts and law surrounding the 2005 Minnesota litigation were omitted from its presentation to the Grand Jury of this district. (*See* Doc. 43 at 21 — *Government's Response to Motion to Dismiss the Indictment on Multiple Grounds of Preclusion and Estoppel* (hereinafter, "Response to Second Motion to Dismiss"; wherein the government admits that the two cases were brought upon the same exact showing, relating that the presentation of facts to the Minnesota court by "Agent Shold's [2005] affidavit [presented to Judge Noel],[] were the same facts set forth in the affidavits of Agent Brant [presented to Judge Hodge in solicitation of a search warrant] [], and the

2

<u>same facts presented to the grand jury sitting in the Middle District of Georgia</u> which returned the indictment in this case on June 13, 2007...") (emphasis supplied).

Mr. McCoy, therefore, maintains that the government appears to have conceded[1] that the Grand Jury of this district was not made aware of the 2005 Minnesota litigation and consequential judgment, or of the possible legal ramifications of its preclusive effects. Hence, the defendant moves for summary dismissal of the indictment owing to the fact that this material omission of fact, and legal instruction, before the Grand Jury was obviously made with the intent of precluding a line of relevant inquiry — all of which served to deny the Grand Jury of its independent role and constitutional function.

It is well settled that "[f]ederal courts possess the power and duty to dismiss federal indictments obtained in violation of the Constitution or laws of the United States." *United States v. Holloway*, 74 F.3d 249, 253 (11th Cir. 1996) (quoting *United States v. Pabian*, 704 F.2d 1533, 1536 (11th Cir. 1983)). It is equally well settled that, pursuant to the supervisory power, this court has the discretion to dismiss indictments on grounds of prosecutorial misconduct occurring before a grand jury. *United States v. Barner*, 441 F.3d 1310, 1315 (11th Cir. 2006) ("the dismissal of an indictment on the ground of prosecutorial misconduct is a discretionary call"); *United States v. Jordan*, 316 F.3d 1215, 1248-49 (11th Cir. 2003) (internal footnote omitted); *accord United States v. Clay*, 376 F.3d 1296, 1300 (11th Cir. 2004), *cert. denied*, 543 U.S. 1192 (2005); *see generally Pabian*, 704 F.2d at

---

[1] Mr. McCoy interprets the government's concession through: (1) its failure to file any response to his *Motion to Unseal*; (2) its informal "response" to Mr. McCoy's *Motion to Unseal* (attached hereto as Exhibit A – which consisted only of a short letter and 8 pages of attached irrelevant Grand Jury testimony); and, (3) there is also the government's unequivocal admission to such effect in its Response to the Second Motion to Dismiss (*see* Doc. 43 at 21).

1536 (11th Cir. 1983).  Although the government is under no duty to bring exculpatory evidence to the grand jury's attention (*see United States v. Williams*, 504 U.S. 36, 51-55 (1992); *see also United States v. Gilbert*, 198 F.3d 1293, 1304 (11th Cir. 1999)("It is settled law that the prosecution is not required to include exculpatory evidence in its presentation to the grand jury"));  the government is, however, required to give the grand jury sufficient information concerning the relevant facts and law such that it can "intelligently to decide whether a crime has been committed." *United States v. Twersky*, 1994 U.S. Dist. LEXIS 8744, 11-12 (S.D.N.Y. 1994) (citation omitted).  Although the prosecutor does not need to give legal instructions that approach the comprehensiveness of the trial judge's charge to the jury, an instruction (or lack thereof) may be "so misleading due to mistakes <u>or omissions</u>, that the ensuing indictment will not be permitted to stand…" *Id*. (emphasis supplied)(citations and internal quotation marks omitted); *see also United States v. Hogan*, 712 F.2d 757, 761 (2d Cir. 1983) (dismissal of the indictment was deemed justified pursuant to the court's supervisory power, which was exercised to prevent prosecutorial impairment of the grand jury's independent role); *see* Defendant's discussion and authorities cited to this effect in his *Motion to Unseal*. (*See* Doc. 41 at 1-2); *see also United States v. Peralta*, 763 F. Supp. 14, 19 (S.D.N.Y. 1991) (indictment dismissed where government's instructions on law were erroneous and misleading).

"As a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *United States v. Cosme*, 134 Fed. Appx. 391, 393 (11th Cir. 2005) (unpublished) (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988) ("Dismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id*. at 256) (internal quotation

marks omitted); see also *United States v. Vallejo*, 297 F.3d 1154, 1165 (11th Cir. 2002)). Furthermore, there is authority stating that "the possibility that a witness may have given false testimony before the grand jury does not [by itself] automatically vitiate an indictment based on that testimony; [in order] to dismiss an indictment[,] the district court must also find an abuse of the grand jury process such as perjury or government misconduct." *United States v. Pettway*, 129 Fed. Appx. 583, 589 (11th Cir. 2005) (unpublished) (quoting *United States v. DiBernarndo* 775 F.2d 1470, 1475 (11th Cir. 1985)). In this Circuit, "dismiss[al] [of an] [] indictment [for prosecutorial misconduct, pursuant to the court's supervisory power] only makes sense if the prosecutorial misconduct has somehow infected the indictment itself, rather than only the trial[, which] is why most of our cases on this subject address misconduct in grand jury proceedings." *United States v. Shelley*, 405 F.3d 1195, 1208 (11th Cir. 2005) (*citing United States v. Accetturo*, 858 F.2d 679 (11th Cir. 1988); *United States v. Holloway*, 778 F.2d 653 (11th Cir. 1985); *United States v. Hyder*, 732 F.2d 841 (11th Cir. 1984); *United States v. Pabian*, 704 F.2d 1533 (11th Cir. 1983).

This Circuit has adopted the Fifth Circuit's "unfair or actual prejudice" standard, first announced in *United States v. Fulmer*, 722 F.2d 1192 (5th Cir. 1983), for determining when an indictment should be dismissed because of prosecutorial misconduct before a grand jury. *See United States v. Ricks*, 817 F.2d 692, 695 (11th Cir. 1987) ("We think the Fifth Circuit's standard is adequate to protect the rights of the accused and also adequate to discourage prosecutorial misconduct...[and herewith] adopt the "unfair or actual prejudice" standard for the Eleventh Circuit.").

Hence, a court may not dismiss an indictment, even for prosecutorial misconduct, without a showing "that the violation substantially influenced the grand jury's decision to indict." *United States v. Exarhos*, 135 F.3d 723, 726-727 (11th Cir. Fla. 1998) (internal quotation marks omitted) (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988), quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986) (O'Connor, J., concurring). There are, however, "isolated exceptions to the harmless-error rule." *Exarhos*, 135 F.3d at 726-727 (11th Cir. 1998) (quoting *Bank of Nova Scotia*, 487 U.S. at 256); see also *United States v. Kramer*, 864 F.2d 99, 101 (11th Cir.1988) (declining "to adopt such a broad reading of *Mechanik*"). These exceptions are limited, however, to cases "in which the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." *Bank of Nova Scotia*, 487 U.S. at 257. It is Mr. McCoy's position that his is such a case — namely, that the government's failure to inform the grand jury of the prior litigation (which was brought upon the same showing, and which terminated in a final judgment in his favor) or of its possible preclusive effects, served to totally deny Mr. McCoy the benefit of the "structural protections[2] of the grand jury." On the other hand, should this Court be of the opinion that Mr. McCoy's is not such a case as would fit in the

---

[2]Thus, the Grand Jury, in this case, was prevented (due to the government's conduct) from performing its constitutional role as the"primary security to the innocent against hasty, malicious and oppressive persecution; [] [which] serves the invaluable function in our society of standing between the accuser and the accused…to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will…[hence] [t]he necessity to society of an independent and informed grand jury becomes readily apparent." *Wood v. Georgia*, 370 U.S. 375, 390 (1962) (Warren, C.J.) (citing 2 Pollock and Maitland, The History of English Law, 2d ed. 1909, 642) (*see also id*. at 649, relating that the "process of indictment by grand jury and trial by petit jury with which we are all familiar" dates back to the fourteenth century). Mr. McCoy maintains that the very purpose, let alone the structural protections, of the grand jury system is rendered meaningless if the government fails to inform that body of the facts and law necessary for it to determine whether a "charge is founded upon reason or was dictated by an intimidating power..." *Wood*, 370 U.S. at 390.

class under which a "presumption of prejudice" is afforded — then Mr. McCoy maintains that this Court's determination of *prejudice* in the this regard and its determination of the merits of the arguments for dismissal under preclusion and estoppel doctrines, made in his *Second Motion to Dismiss* (*see generally* Doc. 34), are one and the same, though with slightly differing standards. Prejudice can be found as a consequence of the government's omission before the Grand Jury simply by finding that Mr. McCoy's preclusion and estoppel arguments are colorable.

In *Pabian*, 704 F.2d at 1535 (11th Cir. 1983), the Eleventh Circuit recognized the fact that "[i]n federal criminal prosecutions, the Constitution guarantees the right to an indictment by an unbiased grand jury...[which] necessarily presupposes an investigative body acting independently of either prosecuting attorney or judge." *Pabian*, 704 F.2d at 1535 (11th Cir. 1983) (quoting *United States v. Dionisio*, 410 U.S. 1, 16 (1973), quoting *Stirone v. United States*, 361 U.S. 212, 218 (1960)) (internal quotation marks omitted). The grand jury's historic role, therefore, as the "protective bulwark standing solidly between the ordinary citizen and the overzealous prosecutor"(*Dionisio*, 410 U.S. at 17; *see generally Wood*, 370 U.S. at 390 (1962); *and*, *Ex parte Bain*, 121 U.S. 1, 11 (1887)) was, in this case, destroyed by the government's material omission. Furthermore, the reality that grand jury proceedings are "secret, *ex parte* and largely under the control of the federal prosecutor, magnifies this concern." *Pabian*, 704 F.2d at 1535 (11th Cir. 1983) (citing *United States v. Serubo*, 604 F.2d 807, 816 (3d Cir.1979)).

Therefore, in order to dismiss an indictment on grounds of prosecutorial misconduct before a grand jury, this Court must find an abuse of the grand jury process. *See United States v. Hyder*, 732 F.2d 841, 845 (11th Cir. 1984); *United States v. Sullivan*, 578 F.2d 121, 124 (5th Cir. 1978); *see also*

*United States v. Cathey*, 591 F.2d 268, 271-72 (5th Cir. 1979). Mr. McCoy maintains that the government's material omission before the Grand Jury in this case represents exactly such an abuse of the grand jury process. Hence, to remedy this sort of prosecutorial misconduct, conduct that deprives the Grand Jury of its historical role and constitutional function, federal courts "possess the power and duty" to exercise their supervisory power to deter, or (as Mr. McCoy requests here) remedy, such illegal conduct by government officials. *See United States v. Hasting*, 461 U.S. 499, 505 (1983); *Holloway*, 74 F.3d at 253 (11th Cir. 1996); *see also United States v. Chanen*, 549 F.2d 1306, 1309 (9th Cir. 1977) ("On occasion, and in widely-varying factual contexts, federal courts have dismissed indictments because of the way in which the prosecution sought and secured the charges from the grand jury...[the] dismissals have been based either on constitutional grounds or on the court's inherent supervisory powers...Whatever the basis of the dismissal, however, the courts' goal has been the same, to protect the integrity of the judicial process...particularly the functions of the grand jury, from unfair or improper prosecutorial conduct"). Mr. McCoy, therefore, maintains that the government's material omissions of fact and law from its presentation to the Grand Jury (clearly effected with the intent to preclude a relevant line of inquiry), necessarily denied that body of its historic role, and Mr. McCoy of his Fifth Amendment right to indictment by an independent and intelligent grand jury — thus, necessitating a dismissal of the indictment in this case.

## Conclusion

Based on the forgoing arguments, Mr. McCoy moves this Court to dismiss the indictment on grounds that it was procured from an uninformed Grand Jury that was kept in the dark by the government's material omissions (calculated to preclude a relevant line of inquiry by that body), which necessarily deprived the Grand Jury of its traditional role and constitutional purpose. In

essence, Mr. McCoy maintains that the government insufficiently instructed the Grand Jury on the facts and law necessary for it to correctly determine whether these fictional stories were themselves able to be considered criminal, in light of the 2005 Minnesota litigation as to the same stories between the same parties – and that such failure to inform the Grand Jury substantially influenced its decision to indict.

Dated:  This 10th day of October, 2008.

Respectfully submitted,

/s/ Morad Fakhimi
MORAD FAKHIMI
FEDERAL DEFENDERS OF THE
MIDDLE DISTRICT OF GEORGIA, INC.
440 Martin Luther King, Jr. Blvd.
Suite 400
Post Office Box 996
Macon, Georgia 31202-0996
Phone: (478) 743-4747
Fax: (478) 207-3419
morad_fakhimi@fd.org
PA Bar ID. 204228
DC Bar ID. 974050

## CERTIFICATE OF SERVICE

I, Morad Fakhimi, hereby certify that on October 10, 2008, I electronically filed the foregoing *Motion to Dismiss the Indictment for Government Misconduct Before the Grand Jury* with the clerk of Court using the CM/ECF system which will send notification of such to all counsel of record.

/s/ Morad Fakhimi
MORAD FAKHIMI
FEDERAL DEFENDERS OF THE
MIDDLE DISTRICT OF GEORGIA, INC.
440 Martin Luther King, Jr. Blvd.
Suite 400
Post Office Box 996
Macon, Georgia 31202-0996
Phone: (478) 743-4747
Fax: (478) 207-3419
morad_fakhimi@fd.org
PA Bar ID. 204228
DC Bar ID. 974050
