# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF GEORGIA
### ALBANY DIVISION

UNITED STATES OF AMERICA    :
                                     :

        **v.**                       :       **CASE NO: 1:07-CR-18-WLS**
                                       :

**FRANK RUSSELL McCOY**    :

_____    :

## Government's Response to Defendant's Motion to
## Dismiss the Indictment for Failure to State an Offense

Comes Now the United States of America, by and through the United States Attorney for the Middle District of Georgia, and hereby responds as follows:

I.    <u>Introduction</u>

Defendant's Motion to Dismiss the Indictment for Failure to State an Offense should be denied.  Defendant argues that the Indictment failed to state an offense under  18 U.S.C. § 1462 because: (1) his conduct does not come within the statute; (2) he did not receive fair warning that his conduct could give rise to prosecution under the statute because the statute is rarely prosecuted, there has been no prior judicial determination of obscenity, and prosecution under the statute would violate ex post fact law; (3) the statute is unconstitutionally vague and overbroad because it does not clearly set forth prohibited conduct and  criminalizes protected speech.

Defendant's arguments fail because: (1) Defendant's conduct clearly comes with ambit of 18 U.S.C. § 1462; (2) the statutory language itself provided fair warning to Defendant that his conduct could give rise to criminal prosecution, and Defendant was also aware of that fact as evidenced by his own pretrial statements and admissions; and (3) the statute is narrowly circumscribed to criminalize only the interstate transmission of obscene matter.

II.    Factual Overview

The Government incorporates, by reference, the comprehensive and detailed recitation of facts provided in its "Corrected Response to Motion to Dismiss the Indictment on Multiple Grounds of Preclusion and Estoppel," (Docket Entry #43).

III.    Argument

A.    Title 18 U.S.C. § 1462 Covers Defendant's Conduct As Charged.

Defendant argues that the Indictment fails to state an offense because the charged conduct does not come within the scope of the statute. Defendant maintains that the statute is inapplicable to his conduct because "nowhere in the 143-year history of reported cases interpreting the prohibition contained in §1462 . . . has it been held that conduct of this sort is even able to be regulated, let alone criminally

punished (i.e., no harm flowed from this conduct, no nuisance was created, the government want to punish thought)." *See* Defendant's Motion p. 1.

Defendant's argument represents a gross misapprehension of the law. In a line of cases spanning the past five decades, the Supreme Court has consistently held obscenity trafficked in interstate commerce, as opposed to obscenity privately used within the home, may be subject to federal regulation. Defendant's attempt to obviate this jurisprudence by mischaracterizing the conduct underlying the charge as "an author's written description of certain fictional events, and his response to an inquiry as to where on the internet a reader may find his stories," *see* Defendant's Motion, p. 27, is wholly unavailing. A simple reading of the statute and the Indictment makes plain that Defendant's characterization is erroneous and his conduct comes within the ambit of the statute.

We begin with the now axiomatic proposition that obscenity is not constitutionally protected speech. *See Roth v. United States*, 354 U.S. 476, 485 (1957) ("obscenity is not within the area of constitutionally protected speech or press"); *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 574 (2002) ("Obscene speech, for example, has long been held to fall outside the purview of the First Amendment."). As such, obscene matter may be subject to extensive federal and state regulation. *See Roth*, 354 U.S. at 485.

The Supreme Court has carved a limited exception to the Government's ability to constitutionally proscribe obscene materials based on private possession within the home. In *Stanley*, the Court held that the Government may not constitutionally criminalize the simple possession of obscenity in one's home. *Stanley v. Georgia*, 394 U.S. 557, 598 (1969) (invalidating a state statute that criminalized possession of obscene material in the home). Explicitly recognizing the narrowness of its holding, the Court stated: "*Roth* and the cases following that decision are not impaired by today's holding. As we have said, the States retain broad power to regulate obscenity; that power simply does not extend to mere possession by the individual in the privacy of his own home." *Id*. at 568.

Contrary to Defendant's argument, the Court did not hold, find, or intimate that the right to possess obscenity in the home extends to or creates a correlative right to produce, receive, or distribute obscenity. Indeed, the Court made clear that the right to privately possess obscenity in the home had no effect of the validity of "statutory schemes prohibiting distribution" of obscene materials. *Stanley*, 394 U.S. at 567-568 ("We hold that the First and Fourteenth Amendments prohibit making mere private possession of obscene materials a crime. *Roth* and the cases following that decision are not impaired by today's holding.").

-4-

In a series of decisions following *Stanley*, the Supreme Court has emphatically rejected the argument that any privacy right recognized in *Stanley* implies some correlative constitutional right to receive or distribute obscene material for use in the home. *See United States v. Orito*, 413 U.S. 139, 141-43 (1973); *United States v. 12 200-Ft. Reels of Film*, 413 U.S. 123, 126-129 (1973); *United States v. Thirty-seven Photographs*, 402 U.S. 363 (1971); *United States v. Reidel*, 402 U.S. 351 (1971); *Smith v. United States*, 431 U.S. 291, 306-307 (1977).

For instance, in *Thirty-seven Photographs*, customs agents seized thirty-seven obscene photographs that Milton Luros carried with him in his luggage when he returned to the United States from Europe. 402 U.S. at 365. Luros, citing *Stanley*, argued that his constitutional right to view obscene photographs in the privacy of his home created a correlative right to carry the photographs in his personal luggage to transport to his home for private use. *Id*. at 375-76. Rejecting that argument, the Supreme Court stated:

> That the private user under *Stanley* may not be prosecuted for possession of obscenity in his home does not mean that he is entitled to import it from abroad free from the power of Congress to exclude noxious articles from commerce . . . . Whatever the scope of the right to receive obscenity adumbrated in *Stanley*, that right, as we said in *Reidel*, does not extend to one who is seeking, as was Luros here, to distribute obscene materials to the public, nor does it extend to one seeking to import obscene materials from abroad whether for private use or public distribution. As we held in *Roth* . . . and reiterated today in *Reidel*,

> supra, obscenity is not within the scope of First Amendment protection. Hence Congress may declare it contraband and prohibit its importation, as it has elected in §1305(a) to do.

402 U.S. at 376-77.   The Supreme Court thus upheld federal obscenity laws proscribing the importation of obscenity for commercial purposes --- even for consenting adult consumers.  *Id*. at 365-66, 375, n.3, 376-77.

Likewise, in *Reidel*, the Court rejected a privacy claim under *Stanley* and upheld federal laws prohibiting the use of the mails for disseminating obscene materials.  402 U.S. at 354-56.  In *Reidel*, the defendant mailed obscene materials to individuals under circumstances where there was no exposure to minors and no unwilling recipients existed.  The *Reidel* Court recognized that the *Stanley* Court "had no thought of questioning the validity of [18 U.S.C.] §1461 as applied to those who, like *Reidel*, are routinely disseminating obscenity through the mails and who have no claim, and could make none, about unwanted governmental intrusions into the privacy of their home."  *Id*. at 354-55.  The Court added that *Stanley*'s focus "was on freedom of mind and thought and on the privacy of one's home.  It does not require that we fashion or recognize a constitutional right in people like Reidel to distribute or sell obscene materials."  *Id*. at 356.  *See also 12 200-Ft. Reels*,  413 U.S. at 127 (characterizing the holding in *Stanley* as "a line of demarcation" not amenable to extensions that turn on activity that occurs outside of the home).

-6-

In *Orito*, the Court held that the lower court erred by relying on "privacy grounds" to invalidate a federal obscenity statute as applied to the non-public transportation of obscene material for private use in the home. 413 U.S. at 141. The defendant in *Orito*, charged with violating 18 U.S.C. § 1462, argued that the transport of obscene films by common carrier for private use was protected by the Constitution. *Id*. Rejecting that argument, the Supreme Court held that the Constitution does not forbid "comprehensive federal regulation of interstate transportation of obscene material merely because such transport may be by private carriage, or because the material is intended for the private use of the transporter." *Id*. at 143. The Court reaffirmed with conviction that any privacy right that *Stanley* may have recognized to possess obscene material in the home did not create a "correlative right to receive, transport, or distribute it." *Id*. To the contrary, the Court observed, those cases "*negated* the idea that some zone of constitutionally protected privacy follows such material when it is moved outside the home area protected by *Stanley*." *Id*. at 141-42 (emphasis added). *See also Smith v. United States*, 431 U.S. 291, 306-07 (1977) ("*Stanley* did not create a right to receive, transport, or distribute obscene material, even though it had established the right to possess the material in the privacy of the home" and noting that the Court has repeatedly rejected arguments that any right recognized in *Stanley* would be nullified without "a correlative right to receive,

transport, or distribute"). *See also Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 65-66 (1973) (observing that if obscenity was protected by the First Amendment, the Court would "would not have found it necessary to decide *Stanley* on the narrow basis of the 'privacy of the home,' which was hardly more than a reaffirmation that 'a man's home is his castle'") (citations omitted).

Relying on this line of cases, the Fourth Circuit recently upheld a defendant's convictions for, among other things, sending and receiving obscene text e-mails in violation of § 1462, and rejected the defendant's facial and as applied challenges "[b]ecause § 1462 punishes trafficking in commerce, not the mere possession of obscene materials." *United States v. Whorley*, 2008 U.S. App. LEXIS 25438, * 9 (December 18, 2008). The Court stated that:

> *Stanley*'s holding was a narrow one, focusing only on the possession of obscene materials in the privacy of one's home. The Court's holding did not prohibit the government from regulating the channels of commerce. In an unbroken line of Supreme Court decisions since *Stanley*, the Court has repeatedly rejected the notion, urged by Whorley, that as a matter of logic, because the First Amendment prohibits the criminalization of private possession of obscene materials within the home, there exists a correlative 'right to receive' obscene materials.

*Id*. Accordingly, the Fourth Circuit held that, like *Reidel*, *Smith*, *Orito*, *and Thirty Seven Photographs,* § 1462 falls outside the narrow holding *Stanley* because:

> The focus of the statute's prohibition is on the movement of obscene matter in interstate commerce, not its possession in the home. This is

> manifested by the statute's prohibition of receiving obscene material from any 'express company,' 'common carrier,' or 'interactive computer service.'  By focusing on the movement of obscene material in channels of commerce, and not on its mere possession, § 1462 is not governed by *Stanley*, but rather is akin to the *Reidel* line of cases decided after *Stanley*.

*Id*. at 11.

Here,  Defendant's conduct as charged is covered by the statute and can find no safe harbor in the narrow holding of *Stanley*.    To be clear, the Indictment charges that Defendant:

> did knowingly use an interactive computer service for carriage in interstate and foreign commerce obscene matters, and aid and abet persons known and unknown to the grand jury in the use [of] an interactive computer service for carriage in interstate and foreign commerce obscene matters.

*See* Indictment (Docket #1).  The Indictment then goes on to describe a specific instance of conduct underlying the charge:  "defendant used an interactive computer service *to transmit* to the Middle District of Georgia and elsewhere, links to three websites . . .which contained obscene 'fantasy' stories . . .."  *Id*. (emphasis added).

Thus, contrary to Defendant's assertion, the Indictment does not simply charge him with writing obscene stories in the privacy of his home, such that he can claim shelter under the privacy exception articulated in *Stanley* which only limits the ability of the Government to regulate the mere possession of obscenity in the home.  Rather,

the Indictment clearly charges him with using an interactive computer service to *transport* in interstate or foreign commerce links to websites containing *obscene* material and aiding and abetting the interstate transportation of obscene material via those websites in violation of §§ 1462 and 2 which permissibly regulate the transporting and trafficking of obscenity *outside* the home.  Accordingly, Defendant may be subject to criminal prosecution under §§ 1462 and 2 for *transporting* obscene material in interstate and foreign commerce irrespective of the fact that he created the obscene material on one or more computers located in the recesses of a basement in his home.

      B.     <u>The Statute Provides Fair Warning of Potential Prosecution for Liability Creating Conduct, Does Not Require Prior Determination Of Obscenity, and Prosecution Will Not Violate Ex Post Facto Law.</u>

Defendant argues that he did not have fair warning that criminal liability under the statute could be applied to his conduct because the statute is rarely prosecuted. Defendant further argues that criminal prosecution in light of a non-enforcement policy and the absence of a prior judicial determination of obscenity violates his fair warning rights and ex post fact law.  These arguments too are without merit.

Defendant had fair warning because the statute itself alerts one to the possibility of prosecution.  Moreover, Defendant has made several admissions regarding the criminal nature of his conduct, the possibility of prosecution for his

conduct, and his awareness of a recent prosecution for similar criminal conduct. Additionally, prosecution under the statute does not require a prior finding of obscenity which is a fact question for the jury, or violate ex post fact law because the charged conduct substantially post-dates the creation of the *Miller* obscenity test.

There is no requirement, other than the clarity of the language in the statute involved, that a defendant be forewarned of prosecution before a charge may be brought.   *See United States v. Alexander*, 736 F.Supp. 968, 993 (D. Minn. 1990). The government is not required to "fire warning shots."  *Alexander*, 736 F.Supp. at 993 (citing *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 61 (1989).  Rather, the law itself is "fair warning" of what may be prosecuted, and "those who conduct their affairs close to the boundaries of proscribed activity necessarily incur some risks." *Polykoff v. Collins*, 816 F.2d 1326, 1340 (9th Cir. 1987).  Moreover, it is well-settled that "ignorance of the law or a mistake of law is no defense to criminal prosecution." *See Whorley*, 2008 U.S. App. LEXIS 25438, * 16 (quoting *Cheek v. United States*, 498 U.S. 192, 199 (1991)).

Here, Defendant had fair warning of his potential criminal liability under federal obscenity statutes, including § 1462.  Notably, with respect to fair warning, Defendant does not contend that the language of the statute lacks sufficient clarity to apprise him of the proscribed conduct.  Rather, Defendant argues that a lack of

enforcement obviated any notice on his part that he could be subjected to criminal liability under the statute.  His argument is without merit.

First, Defendant's perceived lack of enforcement priority is belied by the steady stream of federal criminal obscenity statutes passed into law since the enactment of § 1462. *See e.g.,*  18 U.S.C. § 1466A (2003) (prohibiting the production, distribution, receipt, and possession of obscene visual representations of the sexual abuse of children); 18 U.S.C. § 1468 (1998) (prohibiting the distribution of obscene material by cable or subscription televison service); Pub. L. 104-104, § 507 (expanding 18 U.S.C. §§ 1462 and 1465 to apply to the use of an "interactive computer service" (1996); 18 U.S.C. § 1961 (1984) (adding obscenity to the list of predicate RICO offenses).  This continuing evolution of federal obscenity laws coupled with the Supreme Court's equally consistent validation of federal obscenity laws, discussed above, belies Defendant's contention that a federal policy of non-enforcement prevented him from being on notice that his conduct could give rise to criminal liability and prosecution under federal obscenity laws.

Second, Defendant cannot credibly claim ignorance of the law because his own conduct belies his lack of fair warning contention.  On January 9, 2008, the date Defendant was arrested for the charged crime, he told Department of Homeland Security, Immigration and Customs Enforcement Special Agent Jared Drengson that

he was "surprised this didn't happen a couple of years ago . . . . [and had] put the stories on the Internet to create a stir."  *See* Attachment A (Report of Investigation).[1] Defendant has also made several admissions on publicly accessible websites related to his knowledge of obscenity law and the recent prosecution of "Red Rose" for transporting similar writings over the Internet.  In a posting to the newsgroup message board on the website alt.sex.stories.com, Defendant engaged in a discussion about "Red Rose" and stated:

> In brief, 'Rosie' says the Feebs have busted him/her for obscenity and seized all computer equipment/periphs/storage.
> . . .
> That they're after "perverts" like us with the PATRIOT act?
>
> I've said so quite a few times already.
>
> My guess would be that Red-Rose is first, then Mr. Double (Because THEY charge) next ASSTR, and after that, me.

*See* Attachment B (Oct. 4, 2005 Newsgroup Message Board Discussion).  In light of these and other similar statements, Defendant's lack of fair warning argument simply is not credible.

Defendant is not entitled to a pre-trial obscenity determination, and the lack of a pre-trial determination does not affect his Fifth Amendment Due Process or First

---

[1] The Government has previously provided this report to the defense as part of the Government's "open-file" discovery policy in this case.

Amendment free speech rights. "Where allegedly obscene matter is seized pursuant to a search warrant for evidentiary use in a criminal prosecution, there is no absolute right to a prior adversary hearing." *United States* v. *Pryba*, 502 F.2d 391, 403 (1974). Prior obscenity determinations may be appropriate in situations inapplicable to the instant matter, *e.g.*, where allegedly obscene material is seized for the sole purpose of destruction or where films are seized with the intent to permanently suppress distribution or exhibition. *See Pryba*, 502 F.2d at 403-404 (citations omitted). With respect to the seizure of allegedly obscene material for "the bona fide purpose of preserving it as evidence in a criminal proceeding . . .[,] [s]uch a temporary restraint does not itself become a form of censorship." *Id*. at 404 ((citing *Heller v. New York*, 413 U.S. 483, 490 (1973)) (internal marks omitted) (reasoning that the Fourth Amendment sufficiently protects First Amendment concerns in such cases).

Defendant's Ex Post Facto argument is a fiction because the relevant obscenity standard, articulated in *Miller*, substantially predates the activity charged in the indictment --- Defendant's knowing use of an interactive computer service to carry

obscene matter in interstate commerce, and aiding and abetting the same.[2]
Accordingly, Defendant's fair warning and related arguments fail.

>C.   The Statute Is Neither Unconstitutionally Vague Nor Overbroad as it Clearly Sets Forth Prohibited Conduct and Criminalizes Unprotected Speech Only.

Defendant argues that the statute is unconstitutionally vague and overbroad because it does not provide sufficient notice of liability-creating conduct, reaches protected speech, and would have a chilling effect on a wide range of protected speech. With respect to his vagueness argument, Defendant contends that the statute permits the Government to engage in "policing thought and all manner of non-distributed communications from which no identifiable harm has flowed" and does not specify "what sorts of discussions [referring to writings on the Internet, telephone conversations, emails and Internet chats] can subject one to punishment." *See* Defendant's Motion p. 30. With respect to his overbreadth argument, Defendant contends that the statute reaches a substantial amount of protected speech because it

---

[2] Defendant seems to confuse and conflate the conduct charged --- knowing use of an interactive computer service to carry obscene matter in interstate commerce, and aiding and abetting the same --- with a necessary jury finding that the material transported was obscene. Under the statute, the Government bears the burden of proving that the Defendant knew the matter at issue was sexually oriented in nature, not that the Defendant knew the materials were obscene. *See United States* v. *Linestsky*, 533 F.2d 192, 204 (5th Cir. 1976); *Hamling* v. *United States*, 418 U.S. 87, 123 (1974); *United States* v. *Thevis*, 490 F.2d 76 (1974) (en banc per curiam op).

reaches (a) private, noncommercial speech, (b) that does not create a public nuisance because it is traded only by and between "willing" and mutually interested persons. Relatedly, Defendant argues that "the current state of 'protected speech' jurisprudence precludes this prosecution." *See* Defendant's Motion p. 2. Defendant's arguments must fail as they are based on misstatements of law and a series of factual inaccuracies heavily belied by Defendant's own conduct and admissions.

    1.   <u>Vagueness</u>

A statute is unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment, where "the statute under which [conviction] is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 128 S. Ct. 1830, *1845 (May 19, 2008) (citations omitted). This doctrine requires that criminal statutes "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). However, "the Constitution does not require impossible standards; all that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Hamling v. U.S.*, 418 U.S. 87, 111 (1974). And

"'perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.'" *Williams*, 128 S. Ct. at 1845 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781(1989)).

Here, the statute in definite terms sets forth the prohibited conduct. The statute provides that:

> Whoever brings into the United States . . . or <u>knowingly uses</u> any . . . <u>interactive computer service</u> . . . <u>for carriage in interstate or foreign commerce</u> —
>
> (a) any <u>obscene</u>, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character; or
>  . . .

18 U.S.C. § 1462 (emphasis added). The statute clearly delineates the proscribed conduct as knowingly using an interactive computer service to carry obscenity in interstate commerce.

Contrary to Defendant's argument, the statute is not unconstitutionally indefinite because it does not specify what modes of communication would give rise to criminal liability under the statute. Defendant's argument is flawed on at least three grounds. First, the statute does qualify the term "obscene" with the terms "book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other

matter of indecent character." In addition to the fact that this list explicitly captures the type if obscene matter at issue in this case, the Supreme Court in adopting a broad interpretation of the general words, "other matter of indecent character," further observed that § 1462 "is a comprehensive statute, which should not be construed by a mechanical rule of construction." *United States v. Alpers*, 338 U.S. 680, 684 (1950). *See also United States v. Thomas*, 74 F.3d 701, 708 (6th Cir.1996) (the language of § 1462 demonstrates a congressional intent to legislate comprehensively against the distribution of obscene materials). The vagueness doctrine requires "sufficient definiteness" not statutory exhaustion or "perfect clarity" or "precise guidance."

Second, Defendant's argument misapprehends the triggering event that creates liability under the statute. Contrary to Defendant's contention, no particular *type* of obscene communication (written stories, emails, chats) gives rise to liability under the statute; rather it is the act of the transporting of obscene material in interstate or foreign commerce that subjects one to criminal prosecution. Defendant's argument also misses the point that the obscenity determination under § 1462 is a issue of fact governed by the *Miller* test, not some obscure, undefined legal concept. Because the *Miller* test is incorporated into federal statutes that require an obscenity finding, there is no serious argument that the term "obscenity" as used in the statute is indefinite.

*See United States v. Schales*, 546 F.3d 965 (9th Cir. 2008) (citing *Ashcroft v. ACLU*, 535 U.S. 564, 581 n.11 (2002) (stating that while not mentioned in statutory text, the Court has held that the *Miller* test "defines regulated speech for purposes of federal obscenity statutes")).

Moreover, Defendant's parade of horribles regarding the types of communications that may be subject to obscenity law and his implicit argument that several forms of expression (including written stories and emails) should be immune from proscription even if obscene, are foreclosed by the Supreme Court's decision in *Kaplan v. California*, where it expressly stated that:

> When the Court declared that obscenity is not a form of expression protected by the First Amendment, no distinction was made as to the medium of the expression.  Obscenity can, of course, manifest itself in conduct, in the pictoral representation of conduct, or in the *written and oral description of conduct*.

413 U.S. 115, 118-19 (1973) (emphasis added).  *See also  Whorley*, 2008 U.S. App. LEXIS 25438, * 17 (holding that emails constitute a "work" and written matter under *Miller* and *Kaplan* and can be obscene).  To the extent that Defendant argues that the statute is unconstitutionally vague because it creates a universe of "close cases," the Supreme Court has rejected this argument, stating that:

> [The] basic mistake lies in the belief that the mere fact that close cases can be envisioned renders a statute vague.  That is not so.  Close cases can be imagined under virtually any statute. The problem that poses is

addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt. . . .What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is.

*Williams*, 128 S. Ct. 1830, *1846.

Accordingly, the statute is not infirm for vagueness and no set of credible facts support the assertion that a person of ordinary intelligence could not comprehend the proscribed conduct.

2.    <u>Overbreadth</u>

"According to [] First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech." *Williams*, 128 S. Ct. at *1838. The doctrine strikes a balance between protecting speech and permitting lawful regulation of antisocial conduct by "vigorously enforc[ing] the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id*. Accordingly, a regulation of speech is unconstitutionally overbroad if it captures, in addition to unprotected speech, a substantial amount of protected speech. *Id*.

Section 1462 does not proscribe a substantial amount of protected speech because it proscribes obscene speech only and, as previously discussed, obscenity is not protected speech under the First Amendment. That Defendant wrote the stories

in his home, distributes them for free, and purportedly, only to "willing" recipients does not make his speech anymore protected.

As previously discussed, First Amendment privacy protection that attaches to materials created and privately used in the home, dissolves once those materials are transported or distributed outside of the home and placed into interstate commerce. *Orito*, 413 U.S. at142-143; *Whorley*, 2008 U.S. App. LEXIS 25438 , *9-11.  Once a transporter puts obscene materials in interstate commerce --- the mode of transportation, the sender's intent for private, noncommercial use, and the sender's "professed intent" that the materials be kept private and transported to someone with similar interests are irrelevant.  *Orito*, 413 U.S. at 143-144.  *See also U.S. v. Pryba*, 502 F.2d 391, 407 (D.C. Cir. 1974) (rejecting, under *Orito*, the argument that § 1462 is unconstitutional as applied to interstate transportation of obscene material "to an adult solely for private, noncommercial exhibition.").  *See also Williams*, 128 S. Ct. at 1842 ("[o]ffers to provide or requests to obtain unlawful material, whether as part of a commercial exchange or not, are similarly undeserving of First Amendment protection.  It would be an odd constitutional principle that permitted the government to prohibit offers to sell illegal drugs, but not offers to give them away for free").  These cases foreclose these much trumpeted, but irrelevant, arguments.

Defendant's "willing recipient" argument, aside from being legally weightless, is also factually flawed.  Defendant's argument that the statute and his prosecution thereunder are unconstitutional because he only transmitted his stories to "willing" recipients and thereby did not create a public nuisance that gives rise to First Amendment obscenity concerns is belied by the fact that his stories were readily available on several public websites and in fact easily reached patently *unwilling* recipients.

For instance, over the course of three years the National Center for Missing and Exploited children received at least seven complaints to its Cyber Tipline reporting Defendant's story postings.  One particular report stands out.  On March 1, 2005, a resident of Canada reported the website www.assrt.org/~Kristen/15/advice.txt, stating the following:

> last night I was on google trying to do some research on children with swollen bellies.  My daughter looks like her belly is swollen and I was trying to find any information about this on the net to determine if it was serious or not, anyhow while entering a bunch of different keywords I came across this disgusting and utterly disturbing website came up.  I was so appalled at what I read that I felt compelled to tell law enforcement officials about it and hopefully this sicko will be stopped and reprimanded for what he is doing.

*See* Attachment C (NCMEC Tipline Report).[3]  There is nothing private about Defendant's posting and there was nothing "willing" about this recipient.  Rather, this person stumbled upon one of Defendant's stories on a website when making an innocent inquiry into the possible illness of her daughter.  That, as a matter of indisputable fact, is the very public and nuisancing nature of Defendant's conduct.  Accordingly, these arguments too must fail.

_____Moreover, Defendant's parade of horribles asserting that distributers of films, plays, Stephen King novels and movies such as American Beauty and Traffic could be targeted for prosecution is unavailing.  As the Supreme Court observed in response to similar arguments in *Williams*, such "objections, [] demonstrate nothing so forcefully as the tendency of our overbreadth doctrine to summon forth an endless stream of fanciful hypotheticals."  128 S. Ct. at 1843.  The "mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge . . . . [where] the vast majority of its applications, . . . raises no constitutional problems whatever."  *Id*. at 1844.

_____3.     *Ferber* and *Free Speech Coalition*

---

[3] The Government has previously provided this report, as well as the other reports mentioned, to the defense as part of the Government's "open-file" discovery policy in this case.

Finally, Defendant argues that the statute is unconstitutional under *New York v. Ferber*, 458 U.S. 747 (1982), and *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002). Defendant maintains that if no harm flows to children as a result of the distribution of obscene text stories, then *Ferber* and *Free Speech Coalition* preclude prosecution for the distribution of such stories. Defendant contends that just as images of decidedly "virtual" children may not be regulated consistent with the First Amendment, stories of "fictional" accounts of sexual abuse of children cannot be regulated under obscenity laws without running afoul of the First Amendment. Defendant's argument is incredibly misguided.

*Ferber* and *Free Speech Coalition* involved child pornography, address issues regarding federal regulation of images depicting "real" and "virtual" children, and stand for the proposition that images of real children being sexually abused are *per se* contraband, entirely without First Amendment protection, and do not have to be obscene to be proscribed by federal law. In *Ferber*, the Court held that states may enact statutes that regulate child pornography and that child pornography is *per se* excluded from First Amendment protection. 458 U.S. at 764. The Court further held that because child pornography is unprotected speech *per se*, child pornography is not amenable to the traditional *Miller* test which presupposes some measure of First Amendment value and then inquires whether that value is sufficient to ward off

regulation. *Id*. at 764-765. In *Free Speech Coalition*, the Court held that in child pornography cases the Government has to prove that the children depicted in the images are real, but reaffirmed the holding in *Ferber* that images not depicting real minors are subject to prosecution if they are obscene. 535 U.S. 240-241.

The Fourth Circuit has recently recognized the obscenity distinction in *Whorley*. There, the court rejected the argument that 18 U.S.C. § 1466A(a)(1) is unconstitutional as applied to anime cartoons because the cartoons did not depict "actual" children, observing that *Free Speech Coalition* "itself noted that obscenity *in any form* is not protected by the First Amendment." *Whorley*, 2008 U.S. App. LEXIS 25438, *22. As such, the court reasoned, "regardless of whether [an obscenity statute] requires an actual minor, it is nonetheless a valid restriction on *obscene speech* under *Miller*, not a restriction on non-obscene pornography of the type permitted by *Ferber*." *Id*.

Accordingly, *Ferber* and *Free Speech Coalition* do not undermine federal obscenity statutes that criminalize interstate transportation of obscene material because nothing in these cases suggests, as Defendant asserts, that "fiction is beyond the reach of federal obscenity statute[s]." *See* Defendant's Motion at p. 32. If anything, the holding in *Ferber* and the dicta in *Free Speech Coalition* stand for a proposition contrary to Defendant's argument as these cases make clear that materials

that sexually exploit "virtual" or "fictional" children, though not amenable to regulation as child pornography, may still be regulated by obscenity laws and proscribed if deemed obscene.  Accordingly, Defendant's argument must fail.

*IV.*    *Conclusion*

For the foregoing reasons, the United States respectfully requests this Court deny Defendant's "Motion to Dismiss the Indictment For Failure to State an Offense."

RESPECTFULLY SUBMITTED, this 29rd day of December, 2008.

MAXWELL WOOD
UNITED STATES ATTORNEY


/s/ Jim Crane
JIM CRANE
ASSISTANT U. S. ATTORNEY

DAMON KING
DEPUTY CHIEF
U.S. DEPARTMENT OF JUSTICE

CHANTEL FEBUS
TRIAL ATTORNEY
U.S. DEPARTMENT OF JUSTICE

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have on December 29, 2008, electronically filed the foregoing Government's Response to Defendant's Motion to Dismiss the Indictment for Failure to State an Offense with the clerk of Court using the CM/ECF system which will send notification of such to all counsel of record.

RESPECTFULLY SUBMITTED, this 29rd day of December, 2008.


/s/ Jim Crane
JIM CRANE
ASSISTANT U. S. ATTORNEY


ADDRESS:

POST OFFICE BOX 366
ALBANY, GEORGIA  31702
TELEPHONE:  (229) 430-7754