IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | CASE NO.: 1:07-CR-18 (WLS) |
| FRANK RUSSELL McCOY, | : | |
| Defendant. | : | |

**ORDER**

**I.     INTRODUCTION**

At the close of the Government's evidence, the Court heard argument on Defendant's Federal Rule of Criminal Procedure 29 Oral Motion for Judgment of Acquittal (hereinafter "Motion") during Defendant's criminal bench trial for one count of Transportation of Obscene Matters in violation of 18 U.S.C. §§ 1462 and 2. "After the government closes its evidence . . . , the court on the defendant's motion [for judgment of acquittal] must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Upon passing upon a motion for judgment of acquittal, the trial judge, therefore, must grant the motion "[i]f he concludes . . . there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt," or he must deny it "[i]f he concludes that either of two results, a reasonable doubt or no reasonable doubt, is fairly possible." *United States v. Middleton*, No. CRIM.A. CR205-025, 2006 WL 156872, at *1 (S.D. Ga. Jan. 19, 2006) (citations omitted). The judge must make this determination viewing the presented evidence in a light most favorable to the Government. *United States v. Williams*, 260 F. Supp. 2d 1368, 1375 (S.D. Ga. 2003).

1

In the instant Rule 29 Motion, Defendant seeks acquittal on the only count of the indictment on the basis that the Government failed to carry its burden to show that the materials in question are obscene under *Miller v. California*, 413 U.S. 15 (1973). Specifically, Defendant alleges that the Government failed to meet its burden under the third prong of *Miller*, which requires that the Government prove that the materials lack serious literary, artistic, social or political value.

According to Defendant, *Miller* requires a finding that the work, when taken as a whole, lacks serious literary, artistic, political or scientific value. Focusing on the cornerstone of the American Justice System—that a defendant is presumed innocent until proven guilty—Defendant essentially argues that his stories should be considered *prima facie* artistic unless the Government can provide evidence to rebut this *prima facie* artistic character. In support of this argument, Defendant relies heavily on *Luke Records, Inc. v. Navarro*, 960 F.2d 134 (11th Cir. 1992) (*per curiam*). For the following reasons, the Court finds that the Eleventh Circuit's *per curiam* opinion in *Navarro* does not stand for the proposition that the Government has not met its burden in this case.

## II.  DISCUSSION

### A.  *Luke Records, Inc. v. Navarro*

In *Navarro*, the Eleventh Circuit was confronted with the question of whether a record entitled "As Nasty As They Wanna Be" was obscene by the standards set forth in *Miller*. The record company and musical group that produced recording *Nasty* sought declaratory and injunctive relief after a sheriff in Florida County obtained an ex parte order declaring the record to be obscene. In support of his position, the sheriff introduced only the tape itself. On the contrary, the defendants introduced expert testimony regarding the serious musical value of the

2

record. After reviewing the evidence, the judge concluded that, when considered on the whole, the musical devices utilized in *Nasty* "do not lift *Nasty* to the level of a serious artistic work. Once the riffs are removed, all that remains is the rhythm and explicit sexual lyrics which are utterly without any redeeming social value." *Skywalker Records, Inc. v. Navarro*, 739 F. Supp. 578, 596 (S.D. Fla. 1990). Thus, the judge found *Nasty* to be obscene.

The Eleventh Circuit disagreed, seemingly not quite convinced that the record was sufficient to presume the district court judge's "artistic or literary knowledge or skills to satisfy the last prong of the *Miller* analysis." *Navarro*, 960 F.2d at 138. Since the sheriff submitted no evidence to contradict the testimony that the work had artistic value, the Court "reject[ed] the argument that simply by listening to this musical work, the judge could determine that it had no serious artistic value." *Id.* at 139. Therefore, because the sheriff had not met his burden of proof to show that the recording was obscene, and "[a] work cannot be obscene unless each element of the *Miller* test has been met," the Court reversed the district court's declaratory judgment. *Id.* at 138-39.

Understandably, Defendant reads *Miller* to say that the Government cannot do what it has done in this case—merely place the alleged obscene materials into evidence and argue that they speak for themselves. According to Defendant, "we must necessarily presume now that there is literary value unless and until the government puts forth some effort, some evidence, to show that this material lacks literary, artistic, political or scientific value." (Doc. 165-4 at 42-43.) Per Defendant, "[i]f we are going to abridge speech . . . we need some expert help, and that's what the government has failed to give [the Court] here." (*Id.* at 44.)

In opposition, the Government contends that "[t]here is sufficient and competent evidence in the record for a reasonable finder of fact . . . the Court itself, to determine whether

3

the government has carried its burden beyond a reasonable doubt." (*Id.* at 46.) In addressing *Navarro*, the Government noted that an expert is not required in every obscenity prosecution, and "[a]lthough the Eleventh Circuit has suggested that an expert is certainly competent evidence, it is not a bright-line test that says the case must fail on Rule 29 if there is no expert." (*Id.* at 47-48.) Per the Government, having an expert say that Defendant's stories are obscene would be of little probative value. (*Id.* at 48.) In support of its position, the Government then alluded to *United States v. Whorley*, 550 F.3d 326 (4th Cir. 2008), *cert. denied*, 130 S. Ct. 1052 (2010). In *Whorley*, the Fourth Circuit affirmed defendant's conviction of 74 counts of receiving child pornography. The Government argues that *Whorley* is persuasive precedent, as it relates to the current case, since, in *Whorley*, the Government did not proffer an expert.

Faced with the task of understanding the requirements of judges post-*Navarro*, the Court asked the Government how the Court is to go about making a determination of literary value when there is nothing in the record—e.g., an expert with knowledge, who could testify to indicators of valuable art, etc.—to give the Court some basis from which to make an observation. (Doc. 165-4 at 50-51.) The Government argued that the case law requires the Court to place itself in the shoes of the jury, and apply community standards. (*Id.* at 52.) This response was not particularly helpful since the value prong of *Miller* is not to be adjudged based on a community standard; rather it is to be assessed under an objectively reasonable person standard, as the Government is likely aware. Nevertheless, the Government raised a valid point—that there is no rule that states, if there is no expert, the Government loses under Rule 29. The Court agrees that this is the conclusion that can be drawn from Supreme Court precedent, and the one in which this Court is confronted with reconciling with *Navarro*.

### B.     Analysis

In 1973, on the same day that it issued *Miller*, the Supreme Court issued *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 56 (1973), wherein which it held that a court does not err when it does not "require 'expert' affirmative evidence" that the materials in an obscenity prosecution are obscene "when the materials themselves [are] actually placed in evidence." According to the Court, "[i]n the cases in which this Court has decided obscenity questions since *Roth*, it has regarded the materials as sufficient in themselves for the determination question." *Id.* (quoting *Ginzburg v. United States*, 383 U.S. 463, 465 (1966) (quotations omitted)).  Thus, the Supreme Court made clear that no discrete burden to present affirmative expert evidence would be placed upon the prosecution when the documents themselves are available to the fact finder for review.

In *Navarro*, a case which obviously postdates *Paris Theatre*, the Eleventh Circuit did hold that the sheriff had not met his burden of showing that the recording was obscene.  960 F.2d at 138.  However, in arriving to this finding, the Eleventh Circuit merely observed that the record was insufficient to assume the fact finder's artistic or literary knowledge or skills to satisfy the last prong of the *Miller* analysis.  *Id.*  It is this concern with the sufficiency of the record in *Navarro* that leads this Court to conclude that *Navarro* is factually distinguishable from the case *sub judice*.

To review, *Navarro* concerned the prosecution of a musical composition that contained both instrumental music and lyrics.  In support of their assertion that the song "As Nasty As They Wanna Be" passed constitutional muster, defendants called a psychologist, two music critics, and a Rhode Scholar as their expert witnesses.  These experts provided very compelling evidence regarding *Nasty's* inherent serious musical, artistic, literary, and political value.  On the contrary, the sheriff proffered no evidence to contradict the testimony that *Nasty* had artistic

5

value. In the face of such uncontroverted evidence of serious artistic value, the Eleventh Circuit could not affirm the district court judge's obscenity finding solely on an "assumption" that the district court judge possessed the artistic and/or literary knowledge necessary to conclude that *Nasty* "lack[ed] serious artistic, scientific, literary or political value." *Id.* Such a finding is, in this Court's opinion, wholly consistent with the Supreme Court's declaration that, as a general matter, "[obscenity] is not a subject that lends itself to the traditional use of expert testimony, [since] such testimony is usually admitted for the purpose of explaining to lay jurors what they otherwise could not understand." *See Paris Adult Theatre I*, 413 U.S. at 121 n.6. As applied to *Navarro*, because the *Navarro* record lacked sufficient indicia of the fact finder's knowledge of musical compositions, specifically compositions classified as rap, the judge essentially stood in the shoes of a layman for whom further evidence regarding *Nasty's* "value" would have been needed.[1]

Unlike *Navarro*, the instant case provides a textbook example of an obscenity case for which affirmative evidence, specifically expert affirmative evidence, would not be needed.[2] At issue are a collection of stories that describe in explicit and graphic detail sex acts, incestuous relationships, molestation, masturbation, sexual abuse, rape, intercourse, violent acts, and arguably the torture and/or murder of very young children. Dominated by sex, these short "stories" contain only tenuous plots at best. Consequently, a fact finder need not be a literary aficionado, well versed in writings containing complex themes of incest, pedophilia, and taboo

---

[1] While the Court admits that the aforementioned analysis of *Navarro* smacks of an attempt to divine the intent of the Eleventh Circuit, the Court feels quite confident that the Eleventh Circuit never intended to implicitly overrule the Supreme Court's conclusion that, in the case of an obscenity prosecution, "the materials [are] sufficient in themselves for the determination of the question." *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 56 (1973) (quoting *Ginzburg v. United States*, 383 U.S. 463, 465 (1966)).

[2] Specifically, the Court is concluding that the Government could, indeed, rely on the stories themselves in the instant case. Defendant was free to present an expert on his behalf, which he did, as the trial transcript reflects.

6

sex, to ascertain whether these short stories, taken as a whole, lack serious artistic, scientific, literary, or political value.

Unlike musical compositions, which, as observed by the Eleventh Circuit, arguably "possesses inherent artistic value," *see Navarro*, 960 F.2d at 135, words on a page do not possess intrinsic literary value just because they are arranged in a widely accepted literary form. It is axiomatic that our Constitution does not protect obscene expression, even when that obscene expression is embodied in a literary form. *Miller*, 413 U.S. at 23. In *Kaplan v. California*, 413 U.S. 115, 119-20 (1973), the Supreme Court made clear that while "books . . . have a different and preferred place in our hierarchy of values . . . this generalization, like so many, is qualified by the book's content." Thus, "printed word ha[s] First Amendment protection until [it] collide[s] with the long-settled position of this Court that obscenity is not protected by the Constitution."[3] *Id.*

Therefore, contrary to Defendant's arguments, the constitutional protections for free expression are not built on an autotelic philosophy that says Defendant's short stories are *presumed* to be completely artistic in of themselves, or "*l'art pour l'art*."[4] Such a construction of the First Amendment would render superfluous the third prong of *Miller*, which requires an inquiry into the work's "serious literary, artistic, political or scientific value." Stated in other words, Defendant's short stories are not entitled to a heightened evidentiary standard, as a matter of federal constitutional law, because he believes them to be intrinsically literary, capable of joining the ranks of great classical erotic literature such as *Ulysses*, *Tropic of Cancer*, and

---

[3] In *Kaplan*, the Court found the prosecution's evidence—the tender of the book itself—sufficient "as a matter of federal constitutional law, to support petitioner's conviction." *Kaplan v. California*, 413 U.S. 115, 122 (1973).
[4] *"L'art pour l'art,"* translated to mean "art for art's sake," was a slogan adopted by the French poet, Théophile Gautier, who decried the notion that art had to serve an extrinsic purpose.

7

*Lolita*.[5]  *See* Bench Opinion at 9-12 (Discussion of why the Court concludes that Defendant's short stories, when taken as a whole, lack serious literary, artistic, political or scientific value). Accordingly, though the Eleventh Circuit was not convinced that the musical composition *Nasty* could speak for itself, this Court has far less trouble declaring that Defendant's sexually explicit narratives, with their only tangentially related plots, can speak for themselves.  Accordingly, Defendant's Federal Rule of Criminal Procedure 29 Oral Motion for Judgment of Acquittal is **DENIED**.

    **SO ORDERED**, this   29th   day of March, 2013.

                                          /s/ W. Louis Sands
                                          **THE HONORABLE W. LOUIS SANDS,**
                                          **UNITED STATES DISTRICT COURT**

---

[5] This Court does not purport to say that literary works never require any further evidence to ensure that each element of the *Miller* test is met.  Frankly speaking, however, Defendant's short stories are not of such a high literary quality that any further evidence of their literary value is required.