**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:07-CR-18 (WLS) |
| | : | |
| FRANK RUSSELL McCOY, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**BENCH OPINION**

The instant criminal action is before the Court for findings of fact and conclusions of law following a bench trial conducted Tuesday, January 12, 2010 and Wednesday, January 13, 2010, regarding the indictment.

## I.   BACKGROUND

On June 13, 2007, a one-count indictment was returned by the grand jury in the Albany Division of the Middle District of Georgia charging Defendant Frank Russell McCoy with a single violation of 18 U.S.C. §§ 2 and 1462. (Doc. 1.)

## II.   INDICTMENT

The Grand Jury charged Defendant Frank Russell McCoy with one count of Transportation of Obscene Matters in violation of 18 U.S.C. § 1462.  In relevant part, 18 U.S.C. § 1462 provides that: "Whoever … knowingly uses any … interactive computer service … for carriage in interstate or foreign commerce—(a) any obscene, lewd, lascivious, or filthy … writing … or other matter of indecent character; …—Shall be fined under this title or imprisoned …."  18 U.S.C. § 1462.  The Indictment alleges that Defendant "did knowingly use an interactive computer service for carriage in interstate and foreign commerce obscene matters, and [did] aid

1

and abet persons known and unknown to the grand jury in the use [of] an interactive computer service for carriage in interstate and foreign commerce obscene matters." (*Id.* at 1.)  Providing alleged facts in support of the charge, the Indictment alleges that Defendant "used an interactive computer service to transmit to the Middle District of Georgia and elsewhere, links to three websites: www.young-stuff.com/frank, ftp.asstr.org/pub/Authors/Frank_McCoy/index.htm; and www.mrdoubleena.com/htm/frank/index.htm; … from which web sites the obscene stories were downloaded into the Middle District of Georgia and elsewhere." (*Id.* at 1-2.)

## III.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Findings of Fact[1]

Defendant was indicted under 18 U.S.C. 1462(a) and 2.  (Doc. 1.)  The Government is required to prove several elements beyond a reasonable doubt under the indictment.  In sum, the Government must prove that Defendant knowingly used and caused to be used interactive computer services[2] for the carriage of obscene material in interstate or foreign commerce, and aiding and abetting the same.  The Government alleges that Defendant violated these statutes by sending an undercover agent links to three internet websites that carried text stories that describe in graphic and explicit detail the sexual abuse, rape, torture and murder of children.  (*Id.*)

Prior to trial, the Government and the Defendant filed Joint Stipulations of Fact (Doc. 145).  The Court accepts the stipulations of the parties and finds the following facts as proven beyond a reasonable doubt.   (*Id.*)  The Government requested that the Court render special verdicts on each of the eighteen (18) stories that the Defendant caused to be downloaded in alleged violation of 18 U.S.C. § 1462 and 2.  (Doc. 165-5.)  Defendant alleges that the

---

[1] The Court's findings are based upon the parties' Stipulations of Fact; trial testimony, including that of Cory Brant, Charles Ankney, Jared Drengson, James Fottrell, and Gary Richardson; exhibits; and arguments presented by the Government and Defendant's counsel at trial.

[2] The term "interactive computer service" means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server.  47 U.S.C. § 230(f)(2).

Government's request is a constructive amendment of the indictment and is prohibited under the law and filed a Motion seeking to prohibit the Government from constructively amending the Indictment.  (Doc. 160.)

Having considered the parties' arguments, the Court **DENIES** Defendant's Motion to Preclude the Government from Constructively Amending the Indictment (Doc. 160).   The Government's request did not seek to constructively amend the indictment as alleged by Defendant. *See United States v. Sears*, 303 F. App'x 770, 773 (11th Cir. 2008) (finding that constructive amendment of an indictment occurs where the Government seeks to alter the bases for conviction beyond the essential elements of the offense).   The Court notes that the Government's request does not require any deviation from the factual allegations within the indictment. (Doc. 162.)  Moreover, the number of obscene matters transported is not an element of the crime. *See* 18 U.S.C. §§ 1462 and 2.

Despite the Court's denial of Defendant's Motion to Preclude the Government from Constructively Amending the Indictment, the Court also **DENIES** the Government's Motion to render special verdicts on the eighteen (18) stories.[3]  In light of the facts of this case, a special verdict is neither appropriate nor necessary.  The Court's decision is based on the unique facts of the case at bar and the applicable law, specifically the *Miller* test, which requires the Court to consider the works of Defendant as a whole. *Miller v. California*, 413 U.S. 15, 24 (1973) (deciding whether a work is obscene based on the work "taken as a whole").

The stipulated facts state the following:  On March 22, 2005, Agent Brant, in an undercover capacity, sent an email to mccoyf@millcomm.com.  (Doc. 145 ¶ 1.)  The e-mail address used, mccoyf@millcomm.com, is Defendant's e-mail address.  (*Id.* ¶ 2.)  Defendant

---

[3] The Government did not file a formal Motion seeking special verdicts on each of the eighteen (18) stories submitted in support of the criminal offense alleged against Defendant.  The Court's ruling is based on the oral motion the Government made during trial. (Doc. 165.)

responded to Agent Brant's March 22, 2005 e-mail by electronic communication and provided

Agent Brant links to three web addresses:

> www.young-stuff.com/frank,
> ftp.asstr.org/Authors/Frank_McCoy/index.htm,
> www.mrdoubleena.com/htm/frank/index.htm.[4]

(*Id.* ¶ 3.)

Agent Brant, while located in Albany, Georgia, accessed and downloaded the contents of

one of the three web addresses specified in the indictment (www.young-stuff.com/frank), which

consisted of 2,415 pages of stories. (*Id.* ¶ 4.)  Defendant knew and was aware that Agent Brant

would use an interactive computer service for carriage or transportation of these stories to be

found at those web addresses, in interstate or foreign commerce. (*Id.* ¶ 5.)  Defendant knew that,

when he provided the web addresses to Agent Brant by e-mail, the materials that would be

transported as a result of those e-mails were of a sexually explicit nature. (*Id.* ¶ 8.)  Defendant

admits that he is the author, or in a few cases, the editor of all of the stories tendered by the

government as discovery in this case. (*Id.* ¶ 9.)

Defendant has stipulated to the first two elements of § 1462, (1) that the Defendant

knowingly used or caused to be used an interactive computer service to transport certain

materials in interstate or foreign commerce and (2) that the Defendant knew, at that time, the

---

[4]  Regarding the third website specified in the Indictment, www.mrdoubleena.com/htm/frank/index.htm, the Defendant admits that he engaged in electronic communications with the website operator at www.mrdoubleena.com/htm/frank/index.htm regarding the Defendant's stories located on young-stuff.com/frank and ftp.asstr.org/pub/Authors/Frank_McCoy/index.htm and instructed that website operator to access and download the Defendant's stories from those websites and to upload those stories to www.mrdoubleena.com/htm/frank/index.htm. (Doc. 145 at 4, Second Stipulation ¶ 1.)

content of the materials were sexual in nature.[5] In light of the Defendant's stipulations thereto, the Court finds that these facts have been proved beyond a reasonable doubt. Therefore, Defendant challenges only the third element of his crime, which requires that the Government prove beyond a reasonable doubt that the materials were "obscene."

### B. Conclusions of Law

The Government has charged Defendant with the transportation and carriage of obscene materials based on written stories that he authored and published to the internet. (Docs. 1 and 165 at 15-20.) Following Defendant's stipulation to the first two elements of the crime, the sole remaining issue for the finder of fact is whether or not the written materials are obscene. The Government must prove this third element beyond a reasonable doubt.[6] In order to apply the test for obscenity in the Eleventh Circuit, the trier of fact must consider: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. *Miller*, 413 U.S. at 24; *Luke Records, Inc. v. Navarro*, 960 F.2d 134 (11th Cir. 1992). A work cannot be

---

[5] The Government provided lengthy testimony regarding the forensic investigation and chain of custody of the e-mail communications, tracking systems, and other evidence as proof of the interstate and foreign carriage of the stories and the fact that Defendant was aware that these stories were sexual in nature. Defendant has stipulated to these facts beyond a reasonable doubt; however, the Court notes for the record that the Government has met its burden to prove that (1) the Defendant knowingly used or caused to be used an interactive computer service to transport certain materials in interstate or foreign commerce and (2) that the Defendant knew, at that time, the content of the materials were sexual in nature. (*See* Doc. 165-4 at 19-34.)

[6] Prior to trial, Defendant filed a Motion in Limine to Exclude 404 (b) Material (Doc. 121). The Government did utilize the subject material during trial and therefore this Motion is considered moot. Accordingly, the Court **DENIES** Defendant's Motion in Limine to Exclude 404(b) Material (Doc. 121) as Moot.

held obscene unless each element of the test has been evaluated independently and all three have been met. *Penthouse Int'l, Ltd. v. McAuliffe*, 610 F.2d 1353, 1363 (5th Cir. 1980).[7]

> 1. *Whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest?*

It is undisputed that Defendant's stories describe in explicit and graphic detail sex acts, incestuous relationships, molestation, masturbation, sexual abuse, rape, intercourse, violent acts, and arguably the torture and/or murder of very young children. (Doc. 145.)  The Court finds that, applying contemporary community standards, the stories authored by Defendant, taken as a whole, appeal to the prurient interest of the average person.  The Court notes the arguments of Defendant regarding whether or not the Government successfully presented a case based on the material as a whole, as the statute requires.  The Government focused on eighteen (18) stories as a representative sample.  To determine what constitutes a whole work, a court "must view the context and manner in which the material has been created, packaged, and presented by the author to the intended audience in order to decide what the work 'as a whole' is for purposes of the *Miller* test." *United States v. Extreme Associates*, Crim. No. 03-0203, slip op. at 5 (W.D. Pa. Jan. 15, 2009).

The Court is satisfied that the eighteen (18) stories represent the body of work as a whole based on the testimony provided at trial and the Defendant's own characterizations of his stories, discussed herein.  Because the Court finds that the selected stories represent Defendant's entire body of work, it must now consider whether or not the body of work predominately appeals to the prurient interest. *Miller*, 413 U.S. at 24.  In *Kaplan v. California*, 413 U.S. 115, 116-117

---

[7] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

(1973), the Supreme Court stated that the best evidence of whether the Defendant's stories appeal to the prurient interest is the stories. Defendant describes his stories as involving:

> Incest, (family members having sex), pedophilia, (young children having sex), pregnancy (yes, having babies), and quite often several other quirks as well. These stories (with a few notable exceptions) are usually completely consensual (That means all parties involved want to do whatever they are doing.) and are basically love stories. *Even though most people might consider this abuse, nobody, (with the above noted exceptions) gets abused in his stories.* If a little girl has sex, (gets fucked) it's because she wants to get fucked and asks for it. This may be unrealistic, but these are stories, fantasies, they are not intended as examples of the real world, or suggestions of things to do. (Doc. 165-1, Government Exhibit 1, Hard Copy Printout of the Home Page for Young-stuff.com) (emphasis added).

Defendant's own description of his stories includes the statement that "most people might consider this abuse." An appeal to "prurient" interest is an appeal to a morbid, degrading, and unhealthy interest in sex, not just an ordinary interest. Moreover, the Court finds that the subject matters of Defendant's stories—including incest, child sex-acts, and torture—fall well within contemporary community standards of "prurient."

Appeal to the prurient interest is that which has "a tendency to excite lustful thoughts." *Roth v. United States*, 354 U.S. 476, 487 n.20 (1957). Generally, pornography appeals to the prurient interests because it is designed to arouse lustful thoughts in its audience. The Court is careful in its analysis of the application of the instant test against the facts of this case. Here, the test is whether contemporary community standards warrant a finding that the materials in question appeal to more than ordinary interest in sex. Thus, the Court must consider the standards that would be applied by an average person with an ordinary attitude toward an interest in sex. These contemporary community standards are set by the community as a whole; thus, the instant case is not a matter of applying individual or personal tastes to the materials in questions.

It has been well established that "the use of children as ... subjects of pornographic materials is very harmful to both the children and the society as a whole." S. Rep. No. 95-438, at 5 (1977), *reprinted in* 1978 U.S.C.C.A.N. 42. The Court finds that, as a matter of law, Defendant's body of work satisfies the first element of the required analysis. The Court finds that, applying contemporary community standards, the stories authored by Defendant, taken as a whole, appeal to the prurient interest of the average person. In deciding this case, the Court's decision is not based upon the undersigned judge's personal opinion as to the obscenity of the work, but is an application of the law to the facts based upon the trier of fact's personal knowledge of community standards.

2. *Whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law?*

Regarding the second element, the Court must now consider whether Defendant's stories describe sexual conduct in a patently offensive way. The Court relies upon many of the reasons it provided to find that the materials in question appealed to prurient interests in order to find whether or not the materials describe sexual acts in a patently offensive way. The Court finds that, applying contemporary community standards, the stories authored by Defendant, taken as a whole, depict or describe sexual conduct in a patently offensive way. It is undisputed that Defendant's work includes, but is not limited to: a father having vaginal intercourse and ejaculating inside the cervix of his six-year-old daughter (*see* Gov't's Ex. 5.A, "But Daddy!"); a father digitally penetrating his seven-year-old daughter (*see* Gov't's Ex. 5.B, "TrickDad"); a father having oral sex, ejaculating into the mouth of, digitally and vaginally penetrating, and performing oral sex on his six-year-old daughter (*see* Gov't's Ex. 5.C, "Daddy Please?" ); a father having vaginal intercourse with his daughter and torturing and murdering her (*see* Gov't's Ex. 5.N, "Rapesuzy"); and an adult uncle masturbating and ejaculating, fondling and having

8

vaginal intercourse with his four-year-old niece while the girl's mother and father masturbate and video tape this sexual abuse (*see* Gov't's Ex. 5.R "Tch-Lisa").

Even if the Court were unsatisfied that these topics and their subject matter depict sexual conduct in a patently offensive way, which it is not, the Court notes that Defendant's stories are littered with disclaimers and apologies about the offensive and disturbing nature of the content of his work. For example, the story entitled "Rapesuzy" is prefaced with the following message to the reader:

> This story contains very graphic violence against a very young child. If such things bother you (and they do me) I advise against reading this. The story is based upon a line that ran through my head one night, and I couldn't get it out … I started wondering, if there EVER could POSSIBLY be a reason for a full-grown man, to have to rape, and thoroughly abuse his own little 5-year-old (or younger) daughter, because he loves her, not because he's some kind of sadistic beast ... FINAL WARNING !!!! If you think the previous description is based; the actual story is much worse! I strongly advise you to skip this one. (Doc. 165, *see* Gov't's Ex. 5.N, "Rapesuzy").

The Court finds that Defendant's work falls outside of the accepted limits of public tolerance and is clearly patently offensive. Moreover, the Court notes that Defendant admits that he is aware that his work will offend most of the general public. For these reasons, the Court finds that, applying contemporary community standards, the stories authored by Defendant, taken as a whole, describe sexual conduct in a patently offensive way.

> 3. *Whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value?*

Finally, the Court must consider whether or not the material lacks serious literary, artistic, political or scientific value. *Miller*, 413 U.S. at 25. In some cases, an item may portray explicit sexual conduct and still have serious value in one or more of these areas. *See e.g.*, *Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Mass.*, 383 U.S. 413,

419 (1966) (finding that a work's artistic merit does not depend on the presence of a single explicit scene.).  When applying the *Miller* test, the work is considered as a whole, and even where a portion may be found offensive, the work itself does not for this reason become obscene—even though the scene in isolation might be offensive.  *See Kois v. Wisconsin*, 408 U.S. 229, 229 (1972).  Unlike the previously considered elements, the Court's analysis under this prong is objective and contemporary community standards are not applied.  *Navarro*, 960 F.2d at 138.  To this end, the Court must consider whether an objectively reasonable person considering the material as a whole would find it has or does not have serious literary, artistic, political or scientific value.

In his defense, Defendant relies upon the testimony of an expert witness, Professor Gary Richardson, in order to show the Court that his work has serious literary, political, and artistic value.[8]  (Docs. 165-4 at 67-90, 165-5.)  Professor Richardson is a Professor and Chairman of the Department of English at Mercer University.   Professor Richardson previously received a Fulbright Scholarship and is a decorated academic in the field of English and literature.  Professor Richardson concluded, in his expert opinion, that Defendant's body of work had literary, political, and artistic value.  (Doc. 165-5 at 34-36.)  Professor Richardson describes Defendant's stories as love stories, "basic romance plots," and "science fiction."  (Doc. 165-4 at 80-81.)  While Professor Richardson acknowledges that the predominant themes in Defendant's work involve "social mores" and "may be considered taboo," he testified that these are incidental to Defendant's greater efforts to "undertake an artistic rendering." (*Id.* at 84.)  These themes, including graphic and explicit incestuous sexual abuse, rape, torture, and murder of prepubescent

---

[8] The Court notes that expert testimony is not required in an obscenity case.  However, the testimony of Defendant's expert witness is instructive regarding the third element of the obscenity test found in *Miller*, whether or not material in question possesses serious literary or even slight artistic value.

children and young girls, are according to Professor Richardson, a form of "reader entrapment" which reflects his intent to generate political interest. (*Id.* at 85.)

During his testimony, Professor Richardson also described Defendant's use of complex literary techniques within his body of work that develop the characters and further the plot line;[9] including, interpolated tale (the use of competing narratives) and complex resonances. (*Id.* at 87.) Professor Richardson, as an expert in literature, urges the Court to consider a deeper level and "close reading" of Defendant's work and examine the pornographic "visual gaze" and "central consciousness" are complex "variations on narrative point of view." (*Id.* at 88.) According to Professor Richardson, Defendant's work "reflects serious thought and serious artistry." (Doc. 165-5 at 4.) Among his reasons in support of his conclusion that Defendant's body of work contains literary value are, for example, Defendant's use of inversion of a biological reality in the story entitled "Rapesuzy." There, Professor Richardson points toward Defendant's use of science fiction—including the use of nanobots—as he explores the complex and timeless themes of the nature of love, the difference and relationship between love and sexuality, and how society is disposed to interact sexually with the rest of the world. (*Id.* at 6-7.) For these reasons, Professor Richardson concluded that "under a narrow definition" Defendant's work does have serious literary value and further that "from the standards of people who study literature, [Defendant's] stories would manifest serious literary value."[10] (*Id.* at 19, 22.)

The Court is aware that pornography and material with the presence of disturbing sexual content can often be redeemed where there is a deeper purpose. Where such material

---

[9] For example, Professor Richardson testified that Defendant's attempts to use an "appropriate voice and a language for particular characters are exemplary of the greater depth of his work. (*See* Doc. 165-4 at 87-88) ("He [Defendant] will use—in particular, young children, he will occasionally have them misspeak, he will have them use homonyms for words they do not—not part of their vocabulary so they will use words that sound alike. One character uses the word peanut for penis, for example."

[10] The Court notes that when asked whether he would "teach any of Defendant's stories as an exemplar of the use of literary devices in any of [his] classes?" Professor Richardson answered "No." (Doc. 165-5 at 46.)

communicates literary, artistic, political, or scientific messages a tangible benefit may be conferred upon the target audience; however, in this case, the Court can find no independent value within the work when considered as a whole.  The Court, considering the material in question objectively as is required by the law, simply cannot find that the content of Defendant's works provide serious literary, artistic, politic, or scientific value.  While the expert testimony of Professor Richardson provides critical analysis of Defendant's work, it cannot redeem Defendant's work.  Even if the Court found that Defendant sought to incite political discourse and provide artistic commentary on society as Professor Richardson suggests, the Court can find no literary value within the murk of rape, incest, abuse, molestation, and vivid descriptions of the violations of children as composed within Defendant's work.  Most importantly, notwithstanding Professor Richardson's analysis and opinion, no evidence exists in the Record to support a finding that Defendant's purpose was artistic, scientific or political.  The Record instead establishes a clear purpose to appeal to prurient interest, especially with prepubescent female children.

The Court has carefully considered the facts at bar and the testimony and evidence presented at trial; as a result, the Court finds that the work of Defendant contains no serious literary value or even slight artistic value.  Therefore, the Court finds that the material in question is legally obscene.  *McAuliffe*, 610 F.2d at 1363 (holding that a work cannot be held obscene unless each element of the test has been evaluated independently and all three have been met).  In sum, Defendant's stories present as ordinary and "consensual," patently offensive accounts of various explicit sexual acts, abuse, violence and rape of prepubescent female children as young as four years of age to appeal to the prurient interest of the reader.

## IV.   CONCLUSION

Accordingly, based upon the foregoing findings of fact and conclusions of law, Defendant Frank Russell McCoy is hereby found **GUILTY**, beyond a reasonable doubt, as charged in the Indictment (Doc. 1).  A sentencing hearing shall ensue by separate order.

**SO ORDERED**, this   29 <sup>th</sup> day of March, 2013.

/s/ W. Louis Sands
**THE HONORABLE W. LOUIS SANDS,
UNITED STATES DISTRICT COURT**