```
1                UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF GEORGIA
2                       ALBANY DIVISION

3                 CASE NO. 1:07-CR-18(WLS)

4

5

6    UNITED STATES OF AMERICA

7         Plaintiff,

8    Vs.

9    FRANK RUSSELL McCOY

10        Defendant.

11

12                      STATUS CONFERENCE

13         BEFORE THE HONORABLE W. LOUIS SANDS
             UNITED STATES DISTRICT COURT JUDGE
14

15

16   DATE:                    MAY 19, 2008

17   LOCATION:                ALBANY, GEORGIA

18   COURT REPORTER:          R. DARLENE PINO

19

20   APPEARANCES:

21       FOR THE PLAINTIFF:   JAMES N. CRANE

22
     FOR THE DEFENDANT:       STEPHEN GLASSROTH
23

24

25
```

**R. Darlene Pino**
**United States Court Reporter**
**(229) 343-7550**

1       (Defendant present)

2            THE COURT:  All right.  I believe those are all

3   the cases that are for the regular calendar.  As I recall,

4   it looks like we have one case, among those the first

5   case.  United States versus Javon Cooper is the case to be

6   tried.  Also there's a status conference with regard to

7   case number 1:07-CR-18, United States versus Frank Russell

8   McCoy, that's Mr. Crane and Mr. Glassroth.

9            MR. CRANE:  Yes.

10           THE COURT:  I believe you all asked for a

11  continuance.  The Court continued it, but I think there

12  are some issues that you all might -- it may be good for

13  the Court and you all to discuss.

14           MR. GLASSROTH:  Your Honor, as I recall, we

15  asked for a period of time because it's a unique case.  It

16  is an obscenity case that is text only via the Internet.

17  And it raises lots of issues of a constitutional

18  dimension.

19       The government has notified the defense that all of

20  these stories, some 240 of them, are potentially stories

21  that the government would contend are obscene.  Given

22  that, I have been wading through this material.  It is not

23  an easy read as the Court might gather.

24       I anticipate that there will be motions for the Court

25  to deal with that would be addressing a constellation of

1    constitutional issues under the First Amendment ranging

2    perhaps --

3             THE COURT:  That's right when you say a

4    constellation.

5             MR. GLASSROTH:  Literally there will be.  I am

6    not sure if it would be Orion or any of the others, but

7    there will be lots for the Court to deal with in this.

8         What I expect would be challenges ranging perhaps as

9    far and wide as whether Miller versus California is still

10   something that should be applied in light of the Internet

11   age; whether there can be, under any circumstances,

12   situations where text alone can be deemed to be obscene in

13   this day and age; whether peculiar features of

14   accessibility and how this material can be obtained by

15   those who read it, take it out of the realm of obscenity.

16   There's a lot of interesting -- Well, I don't know if the

17   Court will find it interesting, a lot of interesting

18   issues that I'm encountering, and as I go through them

19   every one that I identify and think about it spawns even

20   more wide ranging things.

21            THE COURT:  In light of the amount of material

22   that you spoke of, how much time do you think you actually

23   need to actually make a review and assessment?

24            MR. GLASSROTH:  And Mr. Crane asked me that, and

25   my response for him was whatever the Court will give me.

 1    If you are holding my feet to the fire, as I imagine that
 2    the Court might, I would anticipate being through some of
 3    the material within the next few weeks.  I would say
 4    probably middle of June would be a realistic time for me
 5    to finish with that.  At that point, I'm going to have to
 6    decide what are the areas that I'm going to need the
 7    assistance of experts, and then I'll have to identify
 8    experts, talk with them.  I will likely need to come to
 9    the Court for certain protective orders that will allow me
10    to share some of the things with experts via either
11    mailing or via the Internet.  This doesn't get into the
12    area of Adam Walsh type issues, but because the government
13    is taking the position that all of these are potentially
14    obscene, I don't want to be placed in the position of
15    distributing anything that the government might then come
16    back and deem me to have distributed.  So I will ask for
17    protective orders on whatever my experts might need to be
18    able to assist in those kind of things.
19        So there's going to be all kinds of little
20    preliminary things as well as we move along with this.
21            THE COURT:  All right.  Mr. Crane, do you have
22    any comments with regard to any particular needs of the
23    government in that regard?
24            MR. CRANE:  No, Your Honor.  We would agree to
25    any reasonable protective order if he needs to share the

```
 1    discovery materials with someone else.
 2              THE COURT:  There's no discovery issues as such
 3    that you see that you have at this time, at this stage?
 4              MR. CRANE:  I'm sorry?
 5              THE COURT:  You don't have any discovery issues
 6    from the government's side at this point?
 7              MR. CRANE:  No.  Basically, we believe we have
 8    pretty much fully complied with discovery and the defense
 9    has everything.
10              THE COURT: All right.  Here's what I am going
11    to suggest.  Let's do it this way.  Mr. Glassroth, I'll
12    give you until July the 1st to make any motions for a
13    protective order and request with regard to experts.
14              MR. GLASSROTH:  Yes, sir.
15              THE COURT:  And when those are made, I think
16    what I would like for you all to do at that point is to
17    confer with regard to a briefing schedule.  In other
18    words, if there are going to be these constitutional
19    issues, we need to get those out of the way, and probably
20    just set up a briefing schedule for that to be done.  I
21    realize it will be in the middle of the summer.  After
22    that has been done, I think that would be the appropriate
23    time for us to look at setting a trial term.  But my guess
24    is it is looking like October to me, at the earliest, just
25    being realistic.
```

```
 1              MR. GLASSROTH:  I think that's right, Your
 2      Honor.
 3              THE COURT:  Depending on the final nature of the
 4      motion you might find and then, of course, the government
 5      won't know how it needs to respond until they have they
 6      first know how you will be proceeding.
 7              MR. GLASSROTH:  And I don't know how to write it
 8      until I exactly know what I am going to do.
 9              THE COURT:  So I think what we'll do then we'll
10      -- let's do it this way, give you until July 1st and then
11      if you all will confer following up that filing and, say,
12      within ten days of that, say, around July 10th if you all
13      would give the Court a proposed briefing/discovery
14      schedule if there are some other particular aspects of
15      discovery that might affect the motions being filed and to
16      schedule a briefing.  And we'll clear the motions first,
17      and then have a better idea on what will go to trial, if
18      anything, and then if so, in what way.  All right.
19              MR. GLASSROTH:  I think that will work, Your
20      Honor, because I am not sure at this juncture whether it's
21      even going to be necessary that we actually get into some
22      of the physical hardware issues having to do with the hard
23      drive and those things.  I haven't even gone there yet.  I
24      have been focusing strictly on the material that was --
25              THE COURT:  Fortunately, we have had some
```

1    experience with the hard drives.
2             MR. GLASSROTH:  I'm hoping to avoid that.
3             THE COURT:  I've had at least two, I think maybe
4    three experiences with that.  So I have a little better
5    guidance that way.
6             MR. GLASSROTH:  Well, interestingly, this won't
7    present the issues that images would normally present in
8    terms of accessibility and access and those kinds of
9    things.  So in some ways this is a little bit easier for
10   all of us to have to forage through.  But nevertheless,
11   like I said, every time I get into something more
12   possibilities arise.  I'm dealing -- As I said a
13   constellation, my universe continues to expand.
14            THE COURT:  Well, it sounds like a defense
15   lawyer's dream to me.
16            MR. GLASSROTH:  Or a law professor's dream.
17            THE COURT:  That may be more accurate.
18       Okay.  We'll take that particular action with regard
19   to that case.
20            MR. GLASSROTH:  Okay, Your Honor.  Thank you.  I
21   have nothing further.  May I be excused?
22            THE COURT:  You may.  Thank you.
23            MR. CRANE:  Thank you, Your Honor.
24
25

**R. Darlene Pino**
**United States Court Reporter**
**(229) 343-7550**

## CERTIFICATE

I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT OF THE PROCEEDINGS.


/s/_____
R. DARLENE PINO                                    NOVEMBER 15, 2013
UNITED STATES COURT REPORTER
Certified Shorthand Reporter (Fl)
CB King Federal Courthouse
201 West Broad Avenue
Albany, Georgia 31701
Phone:(229)343-7550