1        IN THE UNITED STATES DISTRICT COURT

2           FOR THE MIDDLE DISTRICT OF GEORGIA

3                   ALBANY DIVISION

4              _____

5

6    THE UNITED STATES OF AMERICA  :
                                   : Case No. 1:07-CR-18(RLH/WLS)
7    v.                            :
                                   :  January 23, 2008
8                                  :   Albany, Georgia
     FRANK RUSSELL MCCOY,          :
9               DEFENDANT.  :
     _____

10

              INITIAL APPEARANCE/ARRAIGNMENT/DETENTION HEARING
11

            BEFORE THE HONORABLE RICHARD L. HODGE
12         UNITED STATES MAGISTRATE JUDGE, PRESIDING

13   APPEARANCES:

14   FOR THE GOVERNMENT:        JAMES N. CRANE
                                U.S. ATTORNEY'S OFFICE
15                              201 WEST BROAD AVE
                                ALBANY, GA  31701
16
     FOR THE DEFENDANT:         STEPHEN R. GLASSROTH
17                              FEDERAL DEFENDERS OFFICE
                                440 MLK, JR BLVD STE 400
18                              MACON, GA 31201

19

20

21          *Transcribed from Audio Recording by*

22   _____

23          *SALLY L. GRAY, CCR, RPR, USCR*
                     *P.O. BOX 875*
24          *MACON, GA 31202-0875*

25              *(478-752-3497)*

1              **P R O C E E D I N G S**

2     **January 23, 2008**

3              THE COURT:  Today is January 23, 2008, a few

4     minutes before 3:00 in the afternoon.  We have an initial

5     appearance scheduled today in case number 1:07-CR-18 which is

6     styled the United States of America versus Frank Russell

7     McCoy.  Mr. Glassroth, would you and your client mind coming

8     up and approach the bench and Mr. Crane as well where we can

9     hear a little better.  Mr. McCoy, are you able to hear and

10    understand what I am saying to you?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  If at any time you don't understand,

13    let me or your attorney know.

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  A lot of what we went through and we're

16    going through here today you've probably been through in the

17    district court in Minnesota already, but the Federal Rules of

18    Criminal Procedure require that when someone has been charged

19    with a violation of a criminal statute that they appear in

20    front of a judicial officer like myself for what is known as

21    an initial appearance and that's why you are here.

22             You need to be aware of the fact, sir, that this

23    proceeding is being recorded and a tape is running and a

24    record is being made of everything that is said here today,

25    and for that reason you should make no incriminating

1    statements.  I'm not going to ask you anything that would

2    incriminate you, but you should certainly not blurt out

3    anything that might incriminate you.

4         You, of course, have the right to be represented by

5    counsel, and I know that when you appeared initially in the

6    District of Minnesota you were represented there by the

7    office of the public federal defender or the federal public

8    defender, and based on that information we have appointed the

9    public defender's office that serves here in the Middle

10   District of Georgia to represent you in this matter.  Mr.

11   Glassroth, are you just appearing for Mr. Jarrard today?

12        **MR. GLASSROTH:**  No, Your Honor, I am actually going

13   to be counsel of record in this.  Mr. Jarrard will be my

14   second chair.

15        **THE COURT:**  So Mr. Glassroth, who you met today for

16   the first time, will be your attorney in this matter.

17   Usually by the time people appear, especially when you've

18   already had an initial appearance in your home district, you

19   are already aware of what you've been charged with.  We are

20   required, however, to state the charges to you at the initial

21   appearance and advise you of the maximum fines and sentences,

22   and I'm going to ask the Assistant United States Attorney,

23   Mr. Crane, if he would so advise you at this time.

24        **MR. CRANE:**  Yes, Your Honor.  The Defendant Frank

25   Russell McCoy is charged in a one-count indictment with

1    transportation of obscene matters.  This is a violation of

2    Title 18 United States Code, Section 1462.  This calls for a

3    maximum term of imprisonment of five years, up to three years

4    of supervised release, a $250,000 maximum possible fine, and

5    a $100 mandatory assessment.

6         THE COURT:  Thank you, Mr. Crane.  Mr. McCoy, I am

7    certainly not asking you if you did that.  I am asking you

8    only if you understand what you have been charged with here

9    in the Middle District of Georgia?

10         THE DEFENDANT:  Yes, sir, I do.

11         THE COURT:  Okay.  And have you been provided with

12    a copy of the indictment in this case that has been returned

13    against you?

14         THE DEFENDANT:  Yes, sir, I have one here.

15         THE COURT:  Okay.  I don't know if this was

16    explained to you in Minnesota or not, but the fact that you

17    have been indicted, sir, means that a federal grand jury

18    seated here in the Middle District of Georgia has heard some

19    of the evidence that the office of the United States Attorney

20    maintains that it has against you, and when they heard that

21    evidence it was their finding that there was enough probable

22    cause to believe that you committed this offense and that you

23    should therefore be formally charged or indicted and then

24    prosecuted for this offense.  Because probable cause has

25    already been found to exist in this case, there will not be a

1    preliminary examination or a probable cause hearing.  Do you

2    understand that?

3         **THE DEFENDANT:**  Yes, sir.  I met here with the

4    grand jury.

5         **THE COURT:**  Okay.  All right.  I think we've pretty

6    much completed the requirements with regard to the initial

7    appearance.  I am assuming given the difficulty, the problem

8    of what we had to do to get Mr. McCoy down here, I'm assuming

9    that we are going to arraign him while he is present in the

10   district?

11        **MR. GLASSROTH:**  That is true, Your Honor.  We would

12   like to get that out of the way.

13        **THE COURT:**  Does he wish -- I mean, Mr. Crane has

14   already stated the charges to him, does he wish to have a

15   formal reading of the indictment?

16        **MR. GLASSROTH:**  No, Your Honor.  We've been over

17   the charge, and I'm confident that he understands the nature

18   of the offense and what he's charged with.

19        **THE COURT:**  Okay.  And you are prepared at this

20   time, I take it, to enter your plea of not guilty of those

21   charges?

22        **THE DEFENDANT:**  Yes, sir.

23        **MR. GLASSROTH:**  Your Honor, he has executed the

24   plea form, and we have provided Mr. Crane with the executed

25   form entering his plea of not guilty.

1      **THE COURT:**  And for the record, what is the limits

2  of the estimated guidelines?

3      **MR. GLASSROTH:**  The range is 33 to 41 months, Your

4  Honor.

5      **THE COURT:**  Mr. Glassroth, I would like to get your

6  client to acknowledge receipt of the notice of that.  It's

7  not an agreement, but just notice of receipt of it.

8      **MR. GLASSROTH:**  Your Honor, I'm going to get him a

9  copy of this once we've executed the court's copy.  I'm

10  handing the executed copy to the clerk, Your Honor.

11      **THE COURT:**  All right.

12      **DEPUTY CLERK:**  I don't have the plea sheet.

13      **MR. CRANE:**  I apologize, here it is.

14      **THE COURT:**  Thank you.  Now, the standard pretrial

15  order that is used in criminal cases in this district will be

16  filed electronically either this afternoon or in the morning.

17      **MR. GLASSROTH:**  Yes, sir.

18      **THE COURT:**  Since you are with the federal

19  defender's office, I don't guess we need to worry about our

20  policy regarding retained counsel in this district.

21      **MR. GLASSROTH:**  I'm in for the ride, Your Honor.

22      **THE COURT:**  Mr. Crane, do you have any idea -- I

23  know this is just initial appearance and arraignment -- but

24  when this case might be coming up for trial?

25      **MR. CRANE:**  I know that right this very week there

1    is an Albany trial term going on here just down the hall, but

2    I don't have -- I've not yet marked next year's calendar, but

3    will be in touch with Mr. Glassroth and ensure that it

4    comports with the speedy trial date.

5           THE COURT:  All right.  I think we've completed the

6    arraignment and initial appearance, and what we are about to

7    do now, Mr. McCoy, is going to be a repeat of something

8    similar that's already happened to you in the District of

9    Minnesota.

10          Apparently because of your lack of criminal record

11   and strong ties to the community, the office of the United

12   States Attorney in this case is not moving for your pretrial

13   detention.  So you're going to -- I am going to enter an

14   order that will supersede the order of the District of

15   Minnesota since this is the district of the prosecution.  It

16   will be very similar.  There might be some small changes.

17          I'm going to go over these conditions with you.

18   Once you're out on pretrial release, I'm sure it was

19   explained to you, but it's like being on probation, although

20   you haven't been convicted, you will be supervised by a

21   United States probation officer in the Middle District of

22   Georgia, and if you abide by the terms and conditions as set

23   out in this order setting the conditions of release there

24   will be no problem, but should you violate those conditions,

25   it could lead to a revocation hearing, the result of which

1    could be I revoke your pretrial release and modify the right.

2    Do you understand that?

3              **THE DEFENDANT:**  Yes, sir.

4              **THE COURT:**  Okay.  I'm going to go over these rules

5    with you very briefly.  You are not to commit any offense in

6    violation of federal, state, or local law while on release in

7    this case.  A new arrest or a new charge would cause a

8    revocation hearing.  You are to immediately advise the court,

9    and you can do that by advising the supervising probation

10    officer, your attorney, Mr. Glassroth, and the office of the

11    United States Attorney in writing before any change of your

12    address or telephone number.  You must be residing where you

13    tell us you are.

14          And also, you are to appear at all proceedings as

15    required, and you shall next appear in this court probably in

16    front of Judge Sands, the district judge, who will be trying

17    this court when notified to be here.  Mr. Glassroth, of

18    course, will notify you.  When he tells you you need to be

19    here, you need be here, okay.  Should you fail to come

20    without a very, very, very good excuse, like

21    *(unintelligible),* it would result in the issuance of a bench

22    warrant for your arrest and you could be charged with a new

23    offense known as failure to appear if you didn't have an

24    outstanding excuse, and then, if indicted and convicted of

25    that offense, you would be receiving an additional period of

1    time in the custody of the Bureau of Prisons.  Do you

2    understand that?

3            THE DEFENDANT:  Yes, sir.  If I have to, I'll crawl

4    here.  If I can't crawl, I'll call somebody.

5            THE COURT:  All right.  Now, while you are on

6    release you will be reporting to the U.S. Probation Office.

7    Is it in St Paul or Minneapolis?

8            THE DEFENDANT:  Minneapolis.

9            THE COURT:  In Minneapolis?

10           THE DEFENDANT:  Yes.

11           THE COURT:  All right.  I'm going to make a change

12    on my order then.  Okay.  While you are on pretrial release,

13    sir, you will be supervised by the U.S. Probation Office in

14    Minneapolis, Minnesota, and you will report to that office as

15    they direct you.  Do you understand?

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  The pretrial services report indicates

18    that you do not have a passport.  While on pretrial release,

19    you are not to obtain one.

20           THE DEFENDANT:  No, I don't --

21           THE COURT:  While you are on pretrial release your

22    travel is going to be restricted to the District of Minnesota

23    and the Middle District of Georgia, and what this means is

24    you must obtain permission of the supervising probation

25    officer to travel outside of either of those locations.  Do

1    you see what I'm saying?

2         **THE DEFENDANT:**  If my mother dies, then I'd have to

3    call is my understanding.

4         **THE COURT:**  And they will routinely give you

5    permission.  We routinely give people permission to travel

6    outside the restricted area all the time, but get permission

7    before you leave.  And, of course, I cannot and would not

8    interfere with your access to your attorney.  If Mr.

9    Glassroth needs you down here to do some planning in

10   preparing your defense, I want you to let the probation know

11   that you are coming to the Middle District of Georgia.  Okay?

12        **THE DEFENDANT:**  Yes, sir.  Except for financial

13   it's --

14        **THE COURT:**  While you are on pretrial release, Mr.

15   McCoy, you will not possess a firearm, explosive device, or

16   other dangerous weapon.

17        **THE DEFENDANT:**  Dangerous weapon.  I have a couple

18   of swords and some -- air rifle and an air pistol.  I don't

19   know if those would count or not?

20        **MR. GLASSROTH:**  The air guns would not be

21   considered firearms because they don't have the

22   characteristics of the statute.  I don't know about

23   collectibles such -- I assume they're collectibles?

24        **THE DEFENDANT:**  The swords?  Yes, well --

25        **THE COURT:**  Are they ceremonial or --

1    THE DEFENDANT:  No, no.  They're decorative, but

2  they are sharp, and they are usable, because I don't believe

3  in having a knife or anything around that is not razor sharp.

4  It seems to me to be too dangerous.

5    THE COURT:  When was the last time you used a sword

6  on somebody?

7    THE DEFENDANT:  Never.  I've never used a knife or

8  anything on anybody.

9    THE COURT:  Mr. Crane, does that bother you

10  particularly?

11    MR. CRANE:  No.  I believe that given those

12  circumstances those wouldn't be considered dangerous under

13  these circumstances, Your Honor.

14    THE COURT:  All right.  I'll let you keep your

15  swords and your air pistols.  You are to refrain from the

16  excessive use of alcohol while you are on pretrial release.

17    THE DEFENDANT:  I have a beer about once a year.

18    THE COURT:  And you are to report as soon as

19  possible to the pretrial services office or the supervising

20  U.S. Probation Office any contact with law enforcement

21  personnel, including but not limited to any arrest,

22  questioning, or traffic stop.  Now, if you happen to know a

23  police officer and you and he are friends and he says good

24  morning to you, that is not contact by a law enforcement

25  officer.  But if they become interested in you because of

1    something you did or they think you did and they are police

2    officers, you've got to report that.

3         THE DEFENDANT:  I have a question on that.  If I

4    need to contact a police officer because I think there's

5    something wrong being done, does that count or not?

6         THE COURT:  No, you don't have to report -- well, I

7    think you probably ought to let your probation officer in

8    Minnesota know, but that's not -- if you need -- by all

9    means, if you need the assistance of law enforcement, there's

10   nothing in this order that has been designed or intended to

11   keep you from being able to call on one.

12        THE DEFENDANT:  I know that.  I just wondered about

13   the report.

14        THE COURT:  Well, I'd say on the safe side I'd let

15   your probation officer know, but that's -- your calling the

16   police because you need them is different that them

17   questioning you about your whereabouts between midnight and

18   four AM on Wednesday night.

19        You will cooperate fully with the supervising U.S.

20   Probation officer and abide by all of their rules and

21   regulations.  And because of the nature of the offense

22   outlined in the indictment, Mr. McCoy, I am going to require

23   that you will not possess or have under your control any

24   material that contains sexually explicit conduct or any child

25   pornography as defined in 18 United States Code Section 2256.

1    This includes, but is not limited to any matter obtained

2    through access to any computer or any material linked to

3    computer access or use.

4          Further, you shall not own, possess, or use a

5    computer or any device with a modem during your period of

6    release without permission of the supervising United States

7    probation officer.  Do you understand all of that, sir?

8          **MR. GLASSROTH:**  Your Honor, am I clear in

9    understanding that he is prohibited from using any computer

10   without prior approval of probation?

11         **THE COURT:**  Any computer that's hooked to a modem.

12         **MR. GLASSROTH:**  Okay.  For example, and I was

13   explaining this to Mr. Crane, given the distance that we have

14   from my office to his residence, I envision that there's

15   going to be a significant need to be able to communicate

16   electronically.  That's going to require the ability for him

17   to communicate.  Does that need to be established prior to

18   anything to do --

19         **THE COURT:**  Mr. Glassroth, obviously I cannot and

20   do not want to do anything to interfere with your need to

21   prepare your client's defense and to represent him fully, but

22   given the nature of the allegations contained in the

23   indictment, and I realize this man has not been convicted,

24   this is a pretty standard condition we use on things of that

25   nature.  Let's start by getting permission before you contact

1    him.  If this becomes onerous, we will address it again.  I

2    see both sides.  I see a need to restrict his use from

3    computers, but I cannot interfere with your ability to

4    represent your client.

5              **MR. GLASSROTH:**  Sure.

6              **MR. CRANE:**  Your Honor, can I just suggest

7    something?  Mr. Glassroth and I did speak about this earlier.

8    What if the Court makes the condition that he may have access

9    to a computer with a modem solely for purposes of contacting

10   his attorney for purposes of legal representation, and if the

11   Court and this probation officer give him such permission

12   today, I have no objection to his using a computer e-mailing

13   documents back and forth, but if he is out there surfing the

14   net and looking for other things, the temptation to engage in

15   illegal activities --

16             **MR. GLASSROTH:**  Your Honor, the District of

17   Minnesota imposed an additional condition which may solve

18   what the Court is concerned about, and that was -- I don't

19   know if the Court has a copy of the release order entered by

20   the district.  But Condition Q required that he not engage in

21   any computer activity alleged in the indictment, which I

22   think is exactly what we're talking about.  This is unusual

23   because we're not talking about an image case.  This is a

24   text case.  So it's not the same kind of thing that would

25   normally create the high degree of concern for all.  I can

1    envision other means because of the nature of the offense

2    alleged in the indictment, it's going to be necessary for Mr.

3    McCoy and myself to be able to not only communicate over the

4    Internet, but to perhaps do certain types of research in

5    preparation for motions which may be filed having to do with

6    the case and other things, and by not allowing him to have

7    access to those things, I think it hampers him and hampers me

8    as well.  So I understand the Court's concern, and I think

9    the condition as entered in the District of Minnesota that he

10   not engage in any sort of computer activity as alleged in the

11   indictment would take care of it.

12        **THE COURT:**  Well, I was just writing an exception

13   while we were talking that he may communicate with his

14   attorney electronically for trial preparation, including

15   legal research.  But let's make sure it's legal research and

16   not -- and, again, I realize this man has not been convicted.

17   I don't want him doing pornographic research.

18        **MR. GLASSROTH:**  And that's not the case, Your

19   Honor, and this has never been about images.

20        **THE COURT:**  Right.

21        **MR. GLASSROTH:**  This has been about expression and

22   there are First Amendment implications to some of this, and

23   that's why we need to be able to deal with those kinds of

24   things.

25        **THE COURT:**  Do you understand all of that, Mr.

1    McCoy?

2              **THE DEFENDANT:**  Yes, but --

3              **MR. GLASSROTH:**  May I have a moment, Your Honor?

4              **THE COURT:**  Sure.

5              **MR. GLASSROTH:**  Your Honor, after conferring with

6    Mr. McCoy he has one other concern, and that is his ability

7    to communicate with others who are interested and who are

8    assisting in various ways through electronic messages, and

9    that would be email, not Internet, not surfing, not

10   pornography, but these are perfectly standard communications

11   that individuals have, and he advises me Use-Net --

12             **THE DEFENDANT:**  Use-Net News Groups.  It's pure

13   text.

14             **THE COURT:**  Pure text is what got you in trouble.

15             **THE DEFENDANT:**  Yes, but there are news groups that

16   do deal with sex and whatnot.  The ones I would refrain -- I

17   would refrain from any of the ones that deal with any sex

18   stories or anything like that.

19             **THE COURT:**  Well, I think we need to leave it like

20   it is right now and for this reason is.  We can fine tune

21   this if we need to.  We're trying desperately to get this man

22   out of here today so he doesn't have to spend the night in

23   the Dougherty County Jail.  The marshal is buying the bus

24   ticket for him.

25             **MR. GLASSROTH:**  Very good.  Your Honor, if

1    necessary, I will return to the court and ask for a

2    modification of conditions.

3              THE COURT:  We can fine tune this, but, I mean,

4    apparently it sounds to me like he's wanting to do some sort

5    of sex news research.

6              THE DEFENDANT:  No, no, no.

7              MR. GLASSROTH:  No, no.

8              THE DEFENDANT:  No, no, no.

9              THE COURT:  That's what got him in trouble.

10             MR. GLASSROTH:  No, that's not it.  It's

11   communicating in user groups.  He said he would refrain from

12   going to any of those other things.

13             THE COURT:  Okay.

14             MR. GLASSROTH:  But, Your Honor, as needed, if

15   needed, I will return for modification.

16             THE COURT:  Contact me, and you and Mr. Crane and I

17   and Ms. Willis may get our heads together and come up with a

18   workable plan.

19             MR. GLASSROTH:  Yes, sir.

20             THE COURT:  But, Mr. McCoy, the one remaining thing

21   I need to tell you that you were probably told in Minneapolis

22   is that it is a very serious federal offense for you to do

23   anything that would be in the nature of threatening or

24   intimidating or harming anybody who may be a witness against

25   you in this matter or for the U.S. Attorney's Office to

1    present evidence of you having done that in a revocation

2    hearing, I can almost guarantee you your pretrial release

3    would be revoked.  More importantly, you could be indicted

4    for a new criminal offense, and if convicted, then you're

5    looking at a great deal of time in the custody of the Bureau

6    of Prisons.

7             So I'm going to follow the recommendation of the

8    United States Attorney and United States Probation in this

9    case and authorize your release from custody when you execute

10   an unsecured bond in favor of the United States of America in

11   the sum of $25,000.

12            Mr. Glassroth, unfortunately, if we can't get him

13   on a bus, his choices for tonight are on the streets, which I

14   don't recommend, or he would have to spend the night in the

15   Dougherty County jail.  And I realize by releasing him on an

16   unsecured bond it would be more in the nature of protective

17   custody to keep him out of the elements for one night.

18            The order that I have entered directing the

19   marshals to purchase a bus ticket for his return also

20   requires them to transport him from the Dougherty County Jail

21   to the bus terminal tomorrow in time for him to catch the

22   bus.  Now, I'm reluctant to do that, but I was advised by, I

23   believe, Ms. Sanders who may have learned it from Mr. Jarrard

24   that the bus departs at 3:20 or 3:25.

25            **MR. GLASSROTH:**  3:20.

1        **THE COURT:**  And it's 3:05 now.

2        **MR. GLASSROTH:**  I've got his bag in the back my car

3    parked around the corner.  We are going to leave from here

4    directly --

5        **THE COURT:**  Well, the marshals have got to

6    fingerprint him first.

7        **MR. GLASSROTH:**  Oh, okay, they've got to process

8    him?

9        **THE COURT:**  They did the processing -- most of the

10   processing has been done in Minnesota, but Deputy Marshal

11   Crosby said he had to process him.

12       **MR. GLASSROTH:**  Okay, there's no way he'll make the

13   bus then.

14       **THE COURT:**  I don't know if there's any possibility

15   of having him processed in Minnesota and the fingerprint card

16   send down.  I'm not trying to keep him in custody overnight,

17   but --

18       **MR. GLASSROTH:**  But, Your Honor, the order that was

19   entered in the District of Minnesota also called for

20   subsistence for him as part of this transit to and from.  I

21   don't think he should be incarcerated in the jail.  I think

22   subsistence would mean putting him somewhere overnight that

23   is something other than a facility since he is entitled to

24   release since the court did an order for subsistence.  A

25   cheap motel is likely to be the alternative to that, Your

1    Honor.  The only reason he would be held is because he has no

2    money, and I think that that's just an awful thing to do for

3    someone because they're indigent.

4         **THE COURT:**  Well, Mr. Glassroth, I've already

5    acknowledge to you, sir, that I'm sending him to jail to be

6    cruel to him.

7         **MR. GLASSROTH:**  I realize that, and I realize it's

8    a matter of safety.

9         **THE COURT:**  But I have never ordered the marshals

10   to put somebody up in a motel before.

11        **MR. GLASSROTH:**  Well, under the statute that's one

12   of the things that's part of subsistence.  If he needs

13   housing for a night, he is entitled to that subsistence under

14   -- I have the specific code section.  I think it's 4262.  If

15   you'll give me one moment, I can give you the exact cite.

16   It's 4285, 18 U.S.C. Section 4285.

17        **THE COURT:**  How much is a day's subsistence, Mr.

18   Glassroth?

19        **MR. GLASSROTH:**  I couldn't tell you, Your Honor.  I

20   would imagine that the marshals would have that information.

21        **THE COURT:**  Well, the statute does provide for it.

22        **MR. GLASSROTH:**  In the order that was entered, I

23   don't know if the Court has a copy of -- I believe I have a

24   copy of the order from the --

25        **THE COURT:**  I don't know that the district -- can

1  the district court in Minnesota order the district court and

2  the U.S. Marshal's office in Albany, Georgia to pay

3  subsistence?

4  **MR. GLASSROTH:**  Your Honor, I believe, if you look

5  at the statute, if it's required to transport anywhere to any

6  district -- and I don't know how the budget thing would work.

7  It might come out of the budget of the marshal in the

8  District of Minnesota.  That's sort of the internal stuff

9  that neither the Court nor I would be getting into.  But I

10  only have a copy of the order entered by Judge Graham in the

11  District of Minnesota, and I'll provide my copy to the clerk

12  for the Court to take a look at.  And, Your Honor, I don't

13  know if subsistence means the same thing as what we would

14  call per diem, but that would be what I would suggest as the

15  amount of what subsistence would be for whatever the per diem

16  rate would be for the Albany Division.

17  **THE COURT:**  Mr. McCoy, how much money do you have

18  on you?

19  **THE DEFENDANT:**  I think I have about close to $200,

20  I think.  I didn't want to get caught down here and not be

21  able to take a bus if I had to, and I borrowed money to get

22  it.  I borrowed money on a credit card so that I'd have money

23  to --

24  **THE COURT:**  Well, doesn't that resolve it, Mr.

25  Glassroth?

1          **MR. GLASSROTH:**  Well, Your Honor, I think the order

2     says that he's required -- if he borrowed money on a credit

3     card, that doesn't change the fact that he's indigent as

4     found by the District of Minnesota.  And obviously, he's got

5     financial obligations.  If you look at what his source of

6     income is, he's on social security of about $1400 per month

7     -- close to $1500 per money.

8          **THE COURT:**  Mr. Crosby tells me that these funds

9     will have to come out of Macon, and they don't write checks.

10         **DEPUTY MARSHAL:**  We don't have checks here.

11         **THE COURT:**  Now, can you rent him the room, and

12    we'll you reimburse you?

13         **MR. GLASSROTH:**  I probably could.

14         **THE COURT:**  Well, I mean, I don't know how we work

15    this out, but you're right, the statute says that we --

16         **THE DEFENDANT:**  I do have -- I don't have much

17    money, but I have my bills all paid because that's the way --

18    I had to drop my health insurance, but I keep my bills paid

19    so I have very good credit, and I can put it all on the

20    credit card and if somebody could say that I'll get it back,

21    it would be --

22         **THE COURT:**  Well, I plan to order the marshals in

23    compliance with this statute to pay him one day's subsistence

24    because the statute contemplates it.  I told Steve Sparks I

25    wasn't going to do it, but it's been a while since I've ready

1    this statute and it appears -- so, Mr. McCoy, I'm going to do

2    everything I can to get you reimbursed.

3    *(Discussion Aside and Proceedings Concluded)*

4    _____

5         *I HEREBY CERTIFY THAT THE FOREGOING IS A CORRECT*
     *TRANSCRIPT FROM THE AUDIO RECORDING OF PROCEEDINGS IN THE*

6    *ABOVE-ENTITLED MATTER TO THE BEST OF MY ABILITY THIS 21st DAY*
     *OF NOVEMBER, 2013.*

7
                                      *TRANSCRIBER:*
8
                                      *s/SALLY L. GRAY, USCR,*
9                                     *U.S. DISTRICT COURT/GAMD*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25